# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE, | |
| *Plaintiff*, | |
| v. | Case No. 1:21-cv-1238-CKK |
| GINA MCCARTHY, *et al.*, | |
| *Defendants*. | |

## REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS IN PART

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. I

TABLE OF AUTHORITIES ............................................................................................. II

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 2

    I.    The National Climate Task Force is not an agency subject to FOIA. ................................. 2

    II.   Plaintiff is not entitled to discovery. ......................................................... 12

    III.  Gina McCarthy is not a proper defendant in FOIA litigation. ........................................ 15

CONCLUSION ................................................................................................................ 16

## TABLE OF AUTHORITIES

**CASES**

*Armstrong v. Exec. Off. of the President*,
  90 F.3d 553 (D.C. Cir. 1996) ...................................................................7, 10, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 3

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ................................................................................. 14

*Democracy Forward Found. v. White House Off. of Am. Innovation*,
  356 F. Supp. 3d 61 (D.D.C. 2019) ................................................................ *passim*

*Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence*,
  419 F. Supp. 3d 82 (D.D.C. 2019) .................................................................. 9

*Energy Research Found. v. Def. Nuclear Facilities Safety Bd.*,
  917 F.2d 581 (D.C. Cir. 1990) ...................................................................... 9

*Jefferson v. Reno*,
  123 F. Supp. 2d 1 (D.D.C. 2000) .................................................................. 15

*Judicial Watch, Inc. v. U.S. Dep't of Energy*,
  310 F. Supp. 2d 271 (D.D.C. 2004) .............................................................10, 11

*Main St. Legal Servs., Inc. v. Nat'l Sec. Council*,
  962 F. Supp. 2d 472 (E.D.N.Y. 2013) ......................................................... 13, 14

*Main St. Legal Servs., Inc. v. Nat'l Sec. Council*,
  811 F.3d 542 (2d Cir. 2016) ..................................................................... 10, 13

*Martinez v. Bureau of Prisons*,
  444 F.3d 620 (D.C. Cir. 2006) .................................................................... 15

*Meyer v. Bush*,
  981 F.2d 1288 (D.C. Cir. 1993) ..............................................................7, 10, 11, 12

*N.Y. Times Co. v. Def. Health Agency*,
  No. 21-CV-566-BAH, 2021 WL 1614817 (D.D.C. Apr. 25, 2021).......................... 13

*Pacific Legal Found. v. Council on Envt. Quality*,
  636 F.2d 1259 (D.C. Cir. 1980) .................................................................... 8

*Scudder v. CIA*,
  281 F. Supp. 3d 124 (D.D.C. 2017) ............................................................... 4

*Rushforth v. Council of Econ. Advisers*,
762 F.2d 1038 (D.C. Cir. 1985) ........................................................ 8, 9, 10

*Soucie v. David*,
448 F.2d 1067 (D.C. Cir. 1971) .................................................................. 8

*Three Lower Cntys. Cmty. Health Servs. Inc. v. U.S. Dep't of Health & Human Servs.*,
517 F. Supp. 2d 431 (D.D.C. 2007) .......................................................... 15

*U.S. Postal Serv. v. Gregory*,
534 U.S. 1 (2001) .......................................................................................... 4

*Voinche v. Obama*,
428 F. App'x 2 (D.C. Cir. 2011) ............................................................... 15

## EXECUTIVE ORDERS

E.O. 14008, *Tackling the Climate Crisis at Home and Abroad*,
86 Fed. Reg. 7619 (Jan. 27, 2021) ................................................... *passim*

## OTHER AUTHORITIES

Nat'l Aeronautics & Space Admin., *NASA Joins White House National Climate Task Force* (Mar. 23, 2021),
https://perma.cc/A63Q-CX28 ....................................................................... 7

The United States of America, *Reducing Greenhouse Gases in the United States: A 2030 Emissions Target* (Apr. 2021),
https://perma.cc/PFG3-MV5X .................................................................... 6

The White House, *Fact Sheet: President Biden Sets 2030 Greenhouse Gas Pollution Reduction Target Aimed at Creating Good-Paying Union Jobs and Securing U.S. Leadership on Clean Energy Technologies* (Apr. 22, 2021),
https://perma.cc/TBX5-49SQ ...................................................................... 6

The White House, *Readout of the Second National Climate Task Force Meeting* (Mar. 18, 2021),
https://perma.cc/QYH9-ZWHB ................................................................... 4

## INTRODUCTION

Through Executive Order 14008, President Biden has committed his entire Administration to "a Government-wide approach" to combatting the ongoing climate crisis. E.O. 14008, *Tackling the Climate Crisis at Home and Abroad*, § 201, 86 Fed. Reg. 7619, 7622 (Jan. 27, 2021). Recognizing that "[s]uccessfully meeting these challenges will require . . . a coordinated approach from planning to implementation," *id.*, the President established a National Climate Task Force, chaired by his own National Climate Advisor, Gina McCarthy, and made up of high-ranking White House officials and cabinet-level leaders representing numerous federal agencies, *see id.* § 203(a), 86 Fed. Reg. at 7623. The President directed this Task Force to "facilitate the organization and deployment" of his Administration's new approach and "facilitate planning and implementation of key Federal actions" relating to it. *Id.* § 203(b), 86 Fed. Reg. at 7623. Since January, that Task Force has met occasionally, and at those meetings, its members have discussed pressing climate challenges, provided updates from their respective agencies, and highlighted actions by their respective agencies that are consistent with the President's climate agenda. The Task Force has also assisted the President in setting new targets for economy-wide greenhouse gas emissions that are consistent with the Nation's obligations under the Paris Climate Accords, and it is now preparing a national strategy for meeting those targets.

These are, in brief, the well-pleaded allegations set forth in the amended complaint. From these, Plaintiff asks this Court to infer that the Task Force "acts as an 'agency' with substantial authority, independent of the President's own judgment and orders," Pl.'s Br. 9, and so is subject to FOIA. It also names Gina McCarthy as a defendant, in her capacity as chair of the Task Force, based on the same alleged facts. But the allegations of the amended complaint cannot bear the weight that Plaintiff places on them.

*First*, the amended complaint shows that the Task Force acts solely on behalf of the President to advise and assist *him* in the course of *his* duties, and it does not plausibly suggest that the Task Force operates pursuant to or at the direction of any non-presidential source of authority. Moreover, based on the allegations of the amended complaint and relevant public records that this Court may consider, the Task Force bears a substantial resemblance to entities that courts have repeatedly found are *not* agencies subject to FOIA. This is so because the Task Force lacks the sort of definite structure that typically supports agency status; is operationally proximate to the President; and exercises authority, delegated only from the President, that is limited to "facilitat[ing]," E.O. 14008 § 203(b), 86 Fed. Reg. at 7623, the work of others in the federal government. Thus, in the absence of more specific allegations regarding the Task Force's exercises of authority, it is implausible that the Task Force is an agency subject to FOIA.

*Second*, having failed to allege facts that would plausibly indicate that the Task Force is an agency, Plaintiff is not entitled to discovery regarding its invalid claims. As a general rule, discovery is only permitted once a plaintiff has pleaded a plausible claim. Plaintiff's approach would improperly shift the burdens of litigation, and so this Court should reject its request.

*Third*, FOIA litigation against individual defendants is improper. Thus, whatever the merit of Plaintiff's allegations regarding the Task Force, Plaintiff cannot state any FOIA claim against Ms. McCarthy. Accordingly, she should be dismissed from this case.

## ARGUMENT

### I.     The National Climate Task Force is not an agency subject to FOIA.

For all the reasons given in Defendants' opening brief, Plaintiff has not plausibly alleged that the Task Force is an agency subject to FOIA. *See* Defs.' Br. 11–17. In particular, and notwithstanding Plaintiff's arguments in response, Plaintiff has not alleged facts sufficient to make it

plausible, rather than simply possible, that the Task Force "acts as an 'agency' with substantial authority, independent of the President's own judgment and orders," Pl.'s Br. 9. In arguing to the contrary, Plaintiff relies on rhetoric and bare speculation, dressed up in the language of "reasonable inferences," Pl.'s Br. 1–2, 13, 18–19, to puff up its factual allegations and attempt to "nudge[]" its claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It also draws inapt analogies to prior case law establishing what it means for an agency to exercise substantial authority independently of the President. None of these arguments is sufficient to salvage Plaintiff's claim against the Task Force. Because Plaintiff has not plausibly alleged that the Task Force is an agency, its claim should be dismissed.

    1. In response to Defendants' motion, Plaintiff asks this Court to grant it the benefit of extraordinary inferences. According to Plaintiff, the fact that Task Force members "have announced major policy initiatives" at Task Force meetings gives rise to an inference that "the Task Force has either planned, directed, or approved those policies." Pl.'s Br. 13. Similarly, Plaintiff emphasizes that, in compliance with Executive Order 14008, "other agencies are preparing draft action plans for the Task Force's evaluation." *Id.* at 15. From that fact, and from the fact that, in some instances, state officials have sought "consultation" with the Task Force as it reviews agencies' proposals, *id.* 13, Plaintiff extrapolates that the Task Force "approves action plans and implements policies," *id.* at 15. Plaintiff also takes the Task Force's involvement in developing new greenhouse gas emission targets, particularly its "detailed bottom-up analysis," to be "exactly the kind of review and policy action an agency takes." *Id.* And from the fact that the Executive Order, issued by the President, does not refer back to him, Plaintiff asserts that it is even reasonable to question "whether the Task Force serves any advisory or assistance function to the President" at

all." *Id*. at 14. From all this, Plaintiff urges the Court to find that the Task Force is "plainly an agency." *Id.* at 13.

The fundamental problem with Plaintiff's response, though, is that its account of the Task Force's founding and its activities since is not so much "plausible" as it is (at most) "merely possible." *Scudder v. CIA*, 281 F. Supp. 3d 124, 129 (D.D.C. 2017). It is true, for example, that some cabinet-level Task Force members have taken the opportunity to highlight their agencies' significant new policy initiatives and regulatory actions around the time of Task Force meetings. *See, e.g.*, The White House, *Readout of the Second National Climate Task Force Meeting* (Mar. 18, 2021), https://perma.cc/QYH9-ZWHB ("Following the task force meeting, the U.S. Department of Agriculture (USDA) Forest Service announced it will invest more than $218 million to leverage the Land and Water Conservation Fund (LWCF) to fund projects that will help drive rural economic recovery and job creation, support the voluntary stewardship efforts of private landowners, and better conserve America's public lands."); Am. Compl. ¶ 44 (noting USDA announcement was made *following* Task Force meeting, not at it). But that is fully consistent with Executive Order 14008, which directs members of the Task Force to prioritize climate action in their respective agencies' work. *See* E.O. 14008 § 203(c), 86 Fed. Reg. at 7623. And in any case, that Task Force meetings serve as the catalyst or venue for, for instance, the Secretary of Agriculture to announce his agency's intent to fund new projects through the Land and Water Conservation Fund does not even begin to suggest that that decision was made or controlled by the Task Force itself. *See U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) (government decisionmaking is entitled to a presumption of regularity). Thus, Plaintiff's conclusory allegation that "it appears clear that the Task Force played a role in the USDA's development of this project," Am. Compl. ¶ 44, provides no plausible basis for a finding that the Task Force is an agency for purposes of FOIA.

Similarly, the Task Force's role in receiving other agencies' plans and reports for review does not imply that it operates as an agency itself. For one thing, the Task Force did not require agencies to submit these plans and reports to it of its own accord; the President did. *See* E.O. 14008 §§ 211, 216, 86 Fed. Reg. at 7625, 7627. It is difficult to see, then, how the Task Force's "review" is conducted *independently* from the President who directed it. Moreover, in many instances, Executive Order 14008 makes clear that *other* entities are responsible for conducting the sort of significant review that Plaintiff implies the Task Force will do. *See* E.O. 14008 § 211(b) ("Within 30 days of an agency's submission of an action plan, the Federal Chief Sustainability Officer, in coordination with the Director of the Office of Management and Budget, shall review the plan to assess its consistency with the policy set forth in section 204 of this order and the priorities issued by the Office of Management and Budget."). And there is simply no factual support for Plaintiff's conclusory assertion that the Task Force "implements policies." Pl.'s Br. 15. Indeed, as Plaintiff's brief and the amended complaint demonstrate, it is the *agencies*, not the Task Force, that implements relevant climate policies. *See id.* at 5 (discussing announcement of actions taken by USDA, the Department of the Interior, and the Department of Commerce); Am. Compl. ¶¶ 44, 46 (same). Even assuming that the Task Force does play a role in approving agencies' proposals for climate actions, that would not establish that the Task Force "did more than assist [those agencies] in implementing the President's initiatives." *Democracy Forward Found. v. White House Off. of Am. Innovation*, 356 F. Supp. 3d 61, 70 (D.D.C. 2019).

Plaintiff's emphasis on the fact that the Task Force "'developed' a greenhouse-gas reduction target and is currently 'developing' a governmental climate strategy," Pl.'s Br. 13, makes no difference. The reduction target Plaintiff references, the United States' nationally determined contribution under the Paris Climate Accords, was directly "approved by President Joseph R. Biden

—5—

Jr.."  The United States of America, *Reducing Greenhouse Gases in the United States: A 2030 Emissions Target*, at 1 (Apr. 2021), https://perma.cc/PFG3-MV5X.  Even further, the President has touted the number as his own.  *See* The White House, *Fact Sheet: President Biden Sets 2030 Greenhouse Gas Pollution Reduction Target Aimed at Creating Good-Paying Union Jobs and Securing U.S. Leadership on Clean Energy Technologies* ("White House Fact Sheet") (Apr. 22, 2021), https://perma.cc/TBX5-49SQ;  *cf. Democracy Forward*, 356 F. Supp. 3d at 71 (finding that allegations of an office's participation in developing a federal infrastructure plan did not show substantial independence from the President in part because "the White House, not the [office] released the plan").  While Plaintiff cites a White House fact sheet for the proposition that the Task Force developed the greenhouse-gas reduction target and a governmental climate strategy, Pl.'s Br. 13, the fact sheet actually says that it was the whole-of-government process, "launched" by the President and merely "organized through his National Climate Task Force," that "establish[ed] this new 2030 emissions target."  *See* White House Fact Sheet.  In any event, this Court has previously observed that "participating in developing and drafting . . . policy released by the White House does not establish independence from the President."  *Democracy Forward*, 356 F. Supp. 3d at 71.  Indeed, "[i]f anything," such assistance "strengthens the argument" that the entity providing it operates as its "primary function . . . to assist and advise the President."  *Id.*  This principle is fatal to Plaintiff's arguments regarding the Task Force's involvement in developing the United States' nationally determined contribution and a governmental climate strategy aimed at achieving it.

   **2.** Plaintiff's contrary assessment of the amended complaint's merits stems in large part from a misapplication of the case law defining the nature of an agency.  As Defendants explained in their motion to dismiss, the central question regarding the agency status of a component in the EOP is whether that component exercises substantial authority independent from the President,

and there are a number of accepted factors that guide this inquiry. *See* Defs.' Br. 11, 13. "These factors are: (1) 'how close operationally the group is to the President,' (2) 'whether it has a self-contained structure,' and (3) 'the nature of its delegated' authority." *Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 558 (D.C. Cir. 1996) (quoting *Meyer v. Bush*, 981 F.2d 1288, 1293 (D.C. Cir. 1993)).

Plaintiff ignores the first two of these factors. As Defendants previously noted, the Task Force's proximity to the President is clear given its membership, which is made up of cabinet and White House officials who report directly to the President, and its leadership by one of the President's immediate personal staff. *See* Defs.' Br. 15 (citing E.O. 14008 § 203(a), 86 Fed. Reg. at 7623). Moreover, the Task Force has "no sufficiently firm structure or dedicated staff" that would qualify as self-contained. *Id*. Indeed, its membership has fluctuated over time. *See* Nat'l Aeronautics & Space Admin., *NASA Joins White House National Climate Task Force* (Mar. 23, 2021), https://perma.cc/A63Q-CX28 (NASA joining as a Task Force member). Given the D.C. Circuit's observation that it is "very doubtful" that such a loose organization in close proximity to the President "could ever qualify as an agency that exercises substantial independent authority," *Armstrong*, 90 F.3d at 559, Plaintiff's failure to respond to these points is, alone, enough to warrant dismissal of Plaintiff's claim against the Task Force.

Even if Plaintiff could establish an entity's agency status based solely on the nature of its delegated authority, they have not made a sufficient case here. Regarding this factor—which requires assessing whether the Task Force has been delegated "any function . . . other than that of advising and assisting the President," *id.* at 560—Plaintiff argues by analogy to prior cases about agency status, stating that "courts have routinely held that entities with authority comparable to—and indeed less than—the Task Force's authority are agencies for FOIA's purposes," Pl.'s Br. 11.

But Plaintiff's argument misses key distinctions in the case law, and so, coupled with the deficiencies in the amended complaint, it offers no basis for this Court to infer that the Task Force is an agency subject to FOIA.

First, Plaintiff analogizes this case to *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971). As Plaintiff sees it, *Soucie* found the Office of Science and Technology (OST) to be an agency simply because it had authority to evaluate federal programs, which Plaintiff views as analogous to the Task Force's authority to receive and review agency climate-action plans. *See* Pl.'s Br. 11, 13. But Plaintiff misses that *Soucie* turned on a statutory transfer of another agency's authority to "take direct action." *Rushforth v. Council of Econ. Advisers*, 762 F.2d 1038, 1041 (D.C. Cir. 1985); *see also id.* (noting "[i]t was . . . the existence of the [National Science Foundation] functions," including things like "the initiation and support of research" and "awarding scholarships," that was "now vested in OST pursuant to the reorganization, that turned the tide"). There has been no such statutory transfer of authority here, nor does the Executive Order authorize the Task Force to take direct action or exercise a federal agency's statutory authority. Thus, Plaintiff's analogy to *Soucie* falls flat.

Plaintiff's reliance on *Pacific Legal Foundation v. Council on Environmental Quality*, 636 F.2d 1259 (D.C. Cir. 1980), is also unavailing. There, for one thing, the government conceded that CEQ was an agency. *Id.* at 1263. Further, the key fact that the D.C. Circuit highlighted was not CEQ's authority, in isolation, "to review and appraise federal programs that affect the environment," *id.* at 1262, but its "expanded" authority to, among other things, "promulgate[] regulations for implementing the procedural provisions of the National Environmental Policy Act" based on

its appraisals, *Rushforth*, 762 F.2d at 1042. Nothing in the amended complaint or Plaintiff's response plausibly suggests that the Task Force is imbued with similarly significant authority to act directly and independently from the President.

*Energy Research Found. v. Defense Nuclear Facilities Safety Board*, 917 F.2d 581 (D.C. Cir. 1990), provides no greater help to Plaintiff. There, the Defense Nuclear Facilities Safety Board had been established by Congress and granted authority, among other things, to review and evaluate nuclear standards and conduct investigations at nuclear facilities. *Id.* at 582. But, crucially, in exercising these functions, the Board had significant statutory authorities: These included the power to, without any involvement or authorization from the President, "promulgate its own regulations, require the Secretary of Energy to report to it classified information, conduct hearings, compel testimony, hire staff, and obtain assistance from the Nuclear Regulatory Commission." *Democracy Forward Found.*, 356 F. Supp. 3d at 73 (citing *Energy Research Found.*, 917 F.2d at 582). Again, the Task Force has no similar authority here to act without regard to the President's wishes or commands.

*Electronic Privacy Information Center v. National Security Commission on Artificial Intelligence*, 419 F. Supp. 3d 82 (D.D.C. 2019), is similarly inapposite. There, the Court found that the National Security Commission was an agency for the sole reason that Congress had, by statute, made it one. *See id.* at 93 ("Congress chose to call the Commission an 'establishment in the executive branch.'"). Thus, the functional test for agency status—whether the entity exercises substantial independent authority—was irrelevant. *Id.* at 90. Admittedly, the Court, in dicta, suggested briefly that the National Security Commission would qualify under that analysis anyway, noting, among other things, that the government had "stresse[d] that the President 'exerts no control over the Commission's functioning.'" *Id.* at 90. But the government makes no similar concession here.

The *EPIC* case bears virtually no resemblance to this one, and its dicta cannot help Plaintiff establish its claim.

Instead, as Defendants argued in their opening brief, the Court's assessment of the Task Force's authority should be guided primarily by cases like *Meyer v. Bush*, 981 F.2d 1288 (D.C. Cir. 1993), *Armstrong v. Executive Office of the President*, 90 F.3d 553 (D.C. Cir. 1996), *Rushforth v. Council of Economic Advisers*, 762 F.2d 1038 (D.C. Cir. 1985), *Judicial Watch, Inc. v. U.S. Department of Energy*, 310 F. Supp. 2d 271 (D.D.C. 2004), *Main Street Legal Services, Inc. v. National Security Council*, 811 F.3d 542 (2d Cir. 2016), and *Democracy Forward Foundation v. Office of American Innovation*, 356 F. Supp.3d 61 (D.D.C. 2019). Those cases involved entities that, much like the Task Force, had authority to review and coordinate the actions of the federal government in order to ensure consistency with the President's policies. In doing so, all were found to not be agencies because, in doing so, they were not exercising any significant authority independent of the President and, instead, were solely advising and assisting the President. *See, e.g.*, *Armstrong*, 90 F.3d at 563 ("Armstrong has not, however, established that any of this authority can be exercised without the consent of the President, and the NSC cannot be deemed an 'agency' if it does not exercise some substantial non-advisory authority of its own."); *Rushforth*, 762 F.2d at 1043 ("The duty to appraise is directly connected to the Council's duty to make recommendations. CEA has no regulatory power . . . ."); *Main St. Legal Servs.*, 811 F.3d at 562 ("The order does not contemplate that the Steering Committee will pronounce policies, or even set priorities or standards. Rather, it directs the Steering Committee to 'coordinate *interagency* development and implementation' of such matters. Such coordination is at the core of the assistance provided to the President by the NSC. It involves no exercise of authority independent of the President or

even independent of the agencies endeavoring to coordinate their own efforts." (alterations and citation omitted)).   The same is true of the Task Force.

Plaintiff weakly attempts to distinguish some—but not all—of these cases.  It briefly describes the facts of *Judicial Watch*, *Armstrong*, and *Democracy Forward*, *see* Pl.'s Br. 16–17, and purports to distinguish them on the basis that, here, E.O. 14008 "says nothing about the Task Force advising the President or recommending that he do anything," *id.* at 17.  But of course, the failure to use the words "advise" or "assist" does not imply that the President established the Task Force for any other purpose.  Nor, contrary to Plaintiff's claim, does the President's absence from the Task Force's membership plausibly suggest that "the President has no role in the Task Force." *Id.* at 13.  Rather, the President has installed his National Climate Advisor as the Chair of the Task Force. *See* E.O. 14008 § 203, 86 Fed. Reg. at 7623.  That official is tasked by the same Executive Order to "coordinate the policy-making process with respect to domestic climate-policy issues; coordinate domestic climate-policy advice to the President; ensure that domestic climate-policy decisions and programs are consistent with the President's stated goals and that those goals are being effectively pursued; and monitor implementation of the President's domestic climate-policy agenda." *Id.* § 202, 86 Fed. Reg. at 7622.  Thus, it is quite clear that, in directing the Task Force to "facilitate planning and implementation of key Federal actions to reduce climate pollution," E.O. 14008 § 203(b), 86 Fed. Reg. at 7623, the President is "us[ing]" the Task Force "to provide the direction and coordination necessary to secure conformity to [the] overall goals [he has] fixed." *Armstrong*, 90 F.3d at 564.  "[U]ltimate authority to set objectives, determine policy, and establish programs rests elsewhere," *id.*, and nothing in the Executive Order changes that.

As to *Meyer*, Plaintiff notes that the Regulatory Relief Task Force there was chaired by the Vice President, and it implies that this meant that the Court was required to treat the Task Force as

—11—

effectively chaired by the President himself.   *See* Pl.'s Br. 16.  But in discussing the Vice President's chairmanship in *Meyer*, what the D.C. Circuit actually emphasized was that the Vice President "presumably will not express direction to others in the executive branch unless his view is shared by the President."   *Meyer*, 981 F.2d at 1295.  So too for Ms. McCarthy, chair of the National Climate Task Force, National Climate Advisor and Assistant to the President, who cannot be expected to act any differently.   And for all the reasons explained *supra* at 3–6, it is implausible to read E.O. 14008 to authorize the Task Force to "implement," Pl.'s Br. 16, any agenda other than the President's.

In short, the President established the Task Force by Executive Order and authorized it to "facilitate" *his* "Government-wide approach" to the climate crisis.   E.O. 14008 § 203(b), 86 Fed. Reg. at 7623.  However significant that authority might be, nothing about the Executive Order suggests that the Task Force could act with independence from the President, and neither Plaintiff's allegations nor the public record of the Task Force's activities support any inference to the contrary. *See supra* at 3–6.  Instead, the public record reflects that the Task Force is similarly situated, and operates substantially like the various entities within the Executive Office of the President which have been held *not* to be agencies because they solely advise and assist the President in the performance of his duties.  *See supra* at 7–12.  Therefore, as Defendants have argued previously, *see* Defs.' Br. 11–17, Plaintiff's FOIA claim against the Task Force should be dismissed for failure to state a claim.

## II.    Plaintiff is not entitled to discovery.

Plaintiff's request for discovery to salvage its claim against the Task Force should be rejected. *See* Pl.'s Br. 18–20.  Plaintiff contends that FOIA matters are typically resolved on a motion for summary judgment and further notes that certain cases involving questions about agency status

have been resolved after some discovery has taken place. *See id.* at 18–19. And it claims that because, in its view, "there is no indication that the Task Force advises the President or obtains his consent before its activities," it is now entitled to seek discovery. *Id.* at 19.[1]

Plaintiff's argument cannot be reconciled with well-established pleading standards. Federal courts do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Instead, where, as here, a plaintiff's claim rests on "bare assertions" that "amount to nothing more than a formulaic recitation of the elements," *id.* at 681 (internal quotation marks omitted), courts routinely dismiss such claims without discovery. *See, e.g.*, *Democracy Forward*, 356 F. Supp.3d at 73; *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 962 F. Supp. 2d 472, 478 n.4 (E.D.N.Y. 2013), *aff'd*, 811 F.3d 542 (2d Cir. 2016). That principle is especially important in cases like this one, given that discovery "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government." *Iqbal*, 556 U.S. at 687; *see also id.* ("If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed."). And it is even more critical where, as here, a plaintiff's discovery requests would

---

[1] Plaintiff also accuses Defendants of "government-wide stonewalling," suggesting that this justifies discovery now. Pl.'s Br. 20. But Plaintiff's FOIA requests to agencies actually covered by FOIA are presently being processed, and any non-exempt responsive records will be released to Plaintiff in due course. Given the nature of Plaintiff's requests, the significant internal Executive Branch consultations required to provide an appropriate response, and the serious limitations on agency resources during the ongoing COVID-19 pandemic, it is hardly surprising that Plaintiff's requests—which were submitted just months ago—are still being processed. *See New York Times Co. v. Def. Health Agency*, No. 21-CV-566-BAH, 2021 WL 1614817, at *6–7 (D.D.C. Apr. 25, 2021) (recognizing practical limits on agency's capacity to process FOIA requests). So there is no merit to Plaintiff's suggestion.

implicate the activities of the President and his senior advisors. *See Cheney v. U.S. Dist. Ct. for D.C.,* 542 U.S. 367, 385 (2004) ("This is not a routine discovery dispute. The discovery requests are directed to the Vice President and other senior Government officials who served on the NEPDG to give advice and make recommendations to the President."); *see also id.* at 381 (noting discovery orders were extraordinary where government claimed they would cause "substantial intrusions on the process by which those in closest operational proximity to the President advise the President"). There is no basis here, then, to permit Plaintiff to obtain discovery by pleading purely speculative allegations.

What's more, specifically in cases involving the question of whether an entity is an "agency," courts have had no trouble resolving similar questions on motions to dismiss, based on the allegations in a complaint and the public information available regarding the entity in question. Thus, in *Main Street Legal Services,* a district court declined to permit discovery where "the available public records describing the NSC's structure, purpose, and functions are wholly sufficient for a proper adjudication of the NSC's motion." 962 F. Supp. 2d at 478 n.4. This is a particularly appropriate way to proceed, as the *Main Street Legal Services* court noted, given that "discovery is not favored in lawsuits under the FOIA." *Id*. (internal quotation marks omitted). Similarly, in *Democracy Forward*, this Court declined to permit discovery where the plaintiffs' allegations did not set forth plausible allegations that the entity at issue was "different than other entities within the EOP with the purpose of advising and assisting the President which the courts have concluded are not agencies for purposes of FOIA." 356 F. Supp. 3d at 73. Much the same could be said here, and so the Court should reject Plaintiff's attempt to avoid its burden of pleading, in the first instance, sufficient non-conclusory allegations that, if true, would establish that the Task Force is an agency.

—14—

### III.    Gina McCarthy is not a proper defendant in FOIA litigation.

That leaves just one other matter: Ms. McCarthy's presence as a defendant in this case. In their opening brief, Defendants advanced two arguments in favor of her dismissal. First, Defendants explained that individuals are not proper defendants in FOIA litigation and argued that Ms. McCarthy, as an individual federal official, should be dismissed from the case on that basis alone. *See* Defs.' Br. 6–7 (citing, among other cases, *Jefferson v. Reno*, 123 F. Supp. 2d 1, 3 (D.D.C. 2000)). Second, Defendants noted that Ms. McCarthy occupies a position within the White House Office, making her categorically exempt from FOIA. *See* Defs.' Br. 7–8.

Plaintiff acknowledges both arguments, but it does not meaningfully engage with either. In a footnote, Plaintiff responds only with the descriptive statement that Plaintiff "sued Ms. McCarthy only in her official capacity as Chair of the Task Force." Pl.'s Br. 10 n.6. Elsewhere, it quotes Defendants' statement that "Ms. McCarthy occupies a position within the White House Office" without rebutting the point. *See id.* at 15. This approach is unresponsive, though, so Plaintiff should be deemed to have conceded both points and thus abandoned its claim against Ms. McCarthy. *See Three Lower Cntys. Cmty. Health Servs. Inc. v. U.S. Dep't of Health & Human Servs.*, 517 F. Supp. 2d 431, 434 n.2 (D.D.C. 2007), *aff'd* 317 F. App'x 1 (D.C. Cir. 2009). In any event, any argument for retaining Ms. McCarthy as a defendant would be meritless. *See Voinche v. Obama*, 428 F. App'x 2, 3 (D.C. Cir. 2011) ("[C]laims asserted against individual defendants are not cognizable under FOIA, so the district court properly dismissed those claims." (citing *Martinez v. Bureau of Prisons,* 444 F.3d 620, 624 (D.C. Cir. 2006))). Plaintiff's claims against Ms. McCarthy should be dismissed.

## CONCLUSION

For all the reasons stated here and in Defendants' opening brief, Plaintiff's claims against Gina McCarthy and the National Climate Task Force should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Dated: August 30, 2021                        Respectfully submitted,

                                              BRIAN M. BOYNTON
                                              Acting Assistant Attorney General

                                              ELIZABETH J. SHAPIRO
                                              Deputy Director

                                              */s/ Cody T. Knapp*
                                              CODY T. KNAPP, #5715438 (NY)
                                              Trial Attorney
                                              U.S. Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L Street NW
                                              Washington, DC 20005
                                              Tel.: (202) 532-5663
                                              E-mail: cody.t.knapp@usdoj.gov

                                              *Counsel for Defendants*