**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| COMPETITIVE ENTERPRISE INSTITUTE, |
| *Plaintiff*, |
| v. |
| GINA MCCARTHY, *et al.*, |
| *Defendants*. |

Case No. 1:21-cv-1238-CKK

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS IN PART**</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................... ii

EXHIBIT LIST ................................................................................................................................ v

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 1

    I.      The National Climate Advisor ............................................................................. 1

    II.     The National Climate Task Force ........................................................................ 2

    III.    Plaintiff's FOIA Requests .................................................................................... 5

PROCEDURAL HISTORY ............................................................................................................ 6

STANDARD OF REVIEW ............................................................................................................ 7

ARGUMENT .................................................................................................................................. 7

    I.      Gina McCarthy, as an individual official within in the White House Office, is not subject to FOIA. ................................................................................................... 7

    II.     The National Climate Task Force is not an agency subject to FOIA. ..................... 9

    A.     FOIA does not apply to EOP components that lack substantial independent authority and exist solely to advise and assist the President. ................................. 9

    B.     The National Climate Task Force lacks substantial independent authority and exists solely to advise and assist the President. .................................................. 12

CONCLUSION ............................................................................................................................. 18

## TABLE OF AUTHORITIES

**CASES**

*Abhe & Svoboda, Inc. v. Chao*,
 508 F.3d 1052 (D.C. Cir. 2007) ................................................................... 7

*\*Armstrong v. Exec. Off. of the President*,
 90 F.3d 553 (D.C. Cir. 1996) .............................................................. *passim*

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................... 7

*Banneker Ventures, LLC v. Graham*,
 798 F.3d 1119 (D.C. Cir. 2015) ................................................................. 2

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................... 7

*Connecticut v. U.S. Dep't of the Interior*,
 344 F. Supp. 3d 279 (D.D.C. 2018) ........................................................... 2

*\*CREW v. Off. of Admin.*,
 566 F.3d 219 (D.C. Cir. 2009) ........................................................ 9, 11, 15

*\*Democracy Forward Found. v. White House Off. of Am. Innovation*,
 356 F. Supp. 3d 61 (D.D.C. 2019) .............................................. 8, 17, 18

*\*Kissinger v. Reps. Comm. for Freedom of the Press*,
 445 U.S. 136 (1980) ............................................................................ 9, 11

*\*Jefferson v. Reno*,
 123 F. Supp. 2d 1 (D.D.C. 2000) ............................................................... 7

*\*Judicial Watch, Inc. v. Dep't of Energy*,
 412 F.3d 125 (D.C. Cir. 2005) ............................................................ 15, 18

*\*Judicial Watch, Inc. v. U.S. Dep't of Energy*,
 310 F. Supp. 2d 271 (D.D.C. 2004) .................................................... 15, 16

*Judicial Watch, Inc. v. U.S. Secret Serv.*,
 726 F.3d 208 (D.C. Cir. 2013) ................................................................. 10

*Legal Eagle, LLC v. Nat'l Sec. Council Recs. Access & Info. Sec. Mgmt. Directorate*,
 No. 20-cv-1732-RC, 2021 WL 1061222 (D.D.C. Mar. 18, 2021) ........................... 16

*\*Main St. Legal Servs., Inc. v. Nat'l Sec. Council*,
 811 F.3d 542 (2d Cir. 2016) ........................................................ 15, 17, 18

*\*Martinez v. Bureau of Prisons*,
 444 F.3d 620 (D.C. Cir. 2006) .............................................................. 7, 8

*Meyer v. Bush,
   981 F.2d 1288 (D.C. Cir. 1993) ....................................................................... passim

Papasan v. Allain,
   478 U.S. 265 (1986) ............................................................................................ 7

*Rushforth v. Council of Econ. Advisers,
   762 F.2d 1038 (D.C. Cir. 1985) ....................................................................... 15

Ryan v. Dep't of Justice,
   617 F.2d 781 (D.C. Cir. 1980) ........................................................................... 9

Sanders v. U.S. Dep't of Justice,
   No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) .............................. 8

Sculimbrene v. Reno,
   158 F. Supp. 2d 26 (D.D.C. 2001) ..................................................................... 8

*Soucie v. David,
   448 F.2d 1067 (D.C. Cir. 1971) .........................................................10, 11, 15, 17

Sweetland v. Walters,
   60 F.3d 852 (D.C. Cir. 1995) ....................................................................... 12, 15

Trudeau v. Fed. Trade Comm'n,
   456 F.3d 178 (D.C. Cir. 2006) ........................................................................... 7

Voinche v. Obama,
   428 F. App'x 2 (D.C. Cir. 2011) ........................................................................ 8

**FEDERAL STATUTES**

5 U.S.C. § 551(1) .................................................................................................. 10

5 U.S.C. § 552(a)(3)(A) ......................................................................................... 9

5 U.S.C. § 552(a)(4)(B) ......................................................................................... 7

5 U.S.C. § 552(f) ..........................................................................................8, 10, 11

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 7

**OTHER AUTHORITIES**

Biden-Harris Transition, President-Elect Biden Announces Key Members of His Climate Team
   (Dec. 17, 2020),
   https://perma.cc/28CQ-KMPC ........................................................................... 1

H.R. Conf. Rep. No. 93-1380 (1974) ...................................................................11

Message of the President, Reorganization Plan No. 1 of 1977,
   5 U.S.C. App. 1 (July 15, 1977) ......................................................................... 8

—iii—

Nat'l Aeronautics & Space Admin., *NASA Joins White House National Climate Task Force* (Mar. 23, 2021), https://perma.cc/A63Q-CX28 .......................................................................... 2

S. Conf. Rep. No. 93-1200 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285 ...................................11

The White House, *FACT SHEET: President Biden Sets 2030 Greenhouse Gas Pollution Reduction Target Aimed at Creating Good-Paying Union Jobs and Securing U.S. Leadership on Clean Energy Technologies* (Apr. 22, 2021), https://perma.cc/TBX5-49SQ..................................................................................... 5, 13

The White House, *Readout of the First National Climate Task Force Meeting* (Feb. 11, 2021), https://perma.cc/Q938-ZA6F ....................................................................... 3

The White House, *Readout of the Second National Climate Task Force Meeting* (Mar. 18, 2021), https://perma.cc/QYH9-ZWHB ................................................................. 3

The White House, *Readout of the Third National Climate Task Force Meeting* (Apr. 21, 2021), https://perma.cc/2ME5-NML4 .................................................................... 3

The White House, *Readout of the Fourth National Climate Task Force Meeting* (June 24, 2021), https://perma.cc/4TVU-9P2L ................................................................. 3, 4

The White House, *Readout of the Fifth National Climate Task Force Meeting* (Aug. 11, 2021), https://perma.cc/965V-NXXX ................................................................... 4

The White House, *Readout of the Sixth National Climate Task Force Meeting* (Sept. 11, 2021), https://perma.cc/5KA4-SGQA ................................................................. 4

## EXECUTIVE ORDERS

E.O. 12291, *Federal Regulation*, 46 Fed. Reg. 13193 (Feb. 17, 1981).......................................................................... 13

E.O. 14008, *Tackling the Climate Crisis at Home and Abroad*, 86 Fed. Reg. 7619 (Jan. 27, 2021) ................................................................... *passim*

## EXHIBIT LIST

**Exhibit Number**

E.O. 14008, *Tackling the Climate Crisis at Home and Abroad*,

   86 Fed. Reg. 7619 (Jan. 27, 2021) ............................................................................. 1

**INTRODUCTION**

Plaintiff seeks an order from this Court compelling the government to respond to fifteen Freedom of Information Act (FOIA) requests.   But at least one of Plaintiff's requests is improper because its recipients—Defendants Gina McCarthy and the National Climate Task Force—are not subject to FOIA.  Instead, Ms. McCarthy is an individual; only agencies can be sued under FOIA.  And the Task Force is not an "agency" subject to FOIA; it is an Executive Office of the President ("EOP") entity that operates to advise and assist the President, wielding no substantial authority independent of him.  The Supreme Court long ago made clear that such entities are outside the scope of FOIA.  Therefore, Plaintiff's FOIA claims against Ms. McCarthy and the Task Force should be dismissed for failure to state a claim.

**BACKGROUND**

**I.      The National Climate Advisor**

Gina McCarthy, a former Administrator of the Environmental Protection Agency, currently serves as the "first-ever National Climate Advisor" within the White House Office.  *See* Biden-Harris Transition, *President-Elect Biden Announces Key Members of His Climate Team* (Dec. 17, 2020), https://perma.cc/28CQ-KMPC; *see also* Plaintiff's First Amended and Supplemental Complaint ("Supp. Compl."), Dkt. 16-1 ¶ 5.  As National Climate Advisor, Ms. McCarthy leads the White House Office of Domestic Climate Policy, which President Biden established through Executive Order 14008.  *See* E.O. 14008, *Tackling the Climate Crisis at Home and Abroad*, § 202, 86 Fed. Reg. 7619, 7622 (Jan. 27, 2021) (Ex. 1); *see also* Supp. Compl. ¶ 5.  The Climate Policy Office's purpose is to "coordinate the policy-making process with respect to domestic climate-policy issues[,] coordinate domestic climate-policy advice to the President[,] ensure that domestic climate-policy decisions and programs are consistent with the President's stated goals and that

—1—

those goals are being effectively pursued[,] and monitor implementation of the President's domestic climate-policy agenda."[1]  E.O. 14008 § 202, 86 Fed. Reg. at 7622.  Ms. McCarthy's work is supported by the Climate Policy Office's staff, as well as the Deputy National Climate Advisor.  *See id.*  The Executive Order directs all federal agencies to cooperate with the Climate Policy Office and to provide it with any requested information, support, or assistance, "as appropriate and consistent with applicable law."  *Id.*

## II.    The National Climate Task Force

In addition to leading the Climate Policy Office, Ms. McCarthy chairs a second entity established by President Biden through E.O. 14008:  the National Climate Task Force.  *See id.* § 203, 86 Fed. Reg. at 7623; Supp. Compl. ¶¶ 4–5.  The Task Force is a senior-level interagency forum:  In addition to Ms. McCarthy, the Task Force's membership—all full-time government employees—consists of high-ranking White House officials and the leaders of numerous federal agencies.[2]  *See* E.O. 14008 § 203(a), 86 Fed. Reg. at 7623; Supp. Compl. ¶¶ 4, 36.  The Task Force's mission was defined by the President in E.O. 14008:

> The Task Force shall facilitate the organization and deployment of a Government-wide approach to combat the climate crisis.  Th[e] Task Force shall facilitate planning and implementation of key Federal actions to reduce climate pollution; increase resilience to the impacts of climate change; protect public health; conserve our lands, waters, oceans, and biodiversity; deliver environmental justice; and spur

---

[1] Because the operative complaint references E.O. 14008, and because the Executive Order is integral to Plaintiff's claims, the Court may consider the contents of E.O. 14008 at the pleadings stage.  *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).  The Court may also take judicial notice of its contents, and of the contents of related White House press releases, as these are "government document[s] available from a reliable source."  *Democracy Forward Found. v. White House Off. of Am. Innovation*, 356 F. Supp. 3d 61, 68 n.4 (D.D.C. 2019); *see also Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 306 n.23 (D.D.C. 2018).

[2] The Task Force's membership has grown since E.O. 14008 was first issued on January 27, 2021, with the Administrator of NASA joining as a member on March 23.  *See* Nat'l Aeronautics & Space Admin., *NASA Joins White House National Climate Task Force* (Mar. 23, 2021), https://perma.cc/A63Q-CX28; Supp. Compl. ¶ 58.

—2—

well-paying union jobs and economic growth.  As necessary and appropriate, members of the Task Force will engage on these matters with State, local, Tribal, and territorial governments; workers and communities; and leaders across the various sectors of our economy.

E.O. 14008 § 203(b), 86 Fed. Reg. at 7623; Supp. Compl. ¶¶ 37–38.  Thus, the President has given the Task Force a key role in fostering the "whole-of-government" and "coordinated approach" that his climate-policy agenda requires.  E.O. 14008 § 201, 86 Fed. Reg. at 7622; Supp. Compl. ¶¶ 3–4.  The President has further directed the individual members of the Task Force to "prioritize action on climate change" in the course of their work outside the Task Force, "[t]o the extent permitted by law."  E.O. 14008 § 203(c), 86 Fed. Reg. at 7623; Supp. Compl. ¶ 39.

The Task Force held its first meeting virtually on February 11, 2021.  *See* The White House, *Readout of the First National Climate Task Force Meeting* (Feb. 11, 2021), https://perma.cc/Q938-ZA6F; Supp. Compl. ¶ 7.  That meeting featured a visit from Vice President Harris, and involved discussions of the Administration's near-term priorities and the ways in which Task Force members and their agencies and staff planned to collaborate with other governmental partners and prioritize the climate in their decision-making.  *See* The White House, *Readout of the First National Climate Task Force Meeting*; Supp. Compl. ¶¶ 44–46.  The Task Force has held five meetings since, all convened by Ms. McCarthy.  *See* The White House, *Readout of the Second National Climate Task Force Meeting* (Mar. 18, 2021), https://perma.cc/QYH9-ZWHB (convening "to discuss the Biden-Harris Administration's whole-of-government approach to tackling the climate crisis, creating good-paying, union jobs, and prioritizing environmental justice"); The White House, *Readout of the Third National Climate Task Force Meeting* (Apr. 21, 2021), https://perma.cc/2ME5-NML4 (convening to "discuss[] pathways that will significantly reduce greenhouse gases" and "the severe drought that is gripping the western United States"); The White House, *Readout of the Fourth National Climate Task Force Meeting* (June 24, 2021),

https://perma.cc/4TVU-9P2L (convening to discuss "record breaking heat waves, unprecedented drought and water scarcity, and devastating wildfires"); The White House, *Readout of the Fifth National Climate Task Force Meeting* (Aug. 11, 2021), https://perma.cc/965V-NXXX (convening to discuss "the new Intergovernmental Panel on Climate Change (IPCC) report, and its 'code red' warning for the global community to take immediate action to avert the worst effects of climate change"); The White House, *Readout of the Sixth National Climate Task Force Meeting* (Sept. 11, 2021), https://perma.cc/5KA4-SGQA (convening to discuss "the President's continued focus on marshaling an all-of-government approach to helping communities prepare, respond, and recover from disaster"); *see also* Supp. Compl. ¶¶ 56–57, 59, 61.

As evidenced in press releases issued by the White House, the Task Force serves a coordinating and information-sharing function.  At meetings, White House and cabinet officials have discussed pressing climate-policy challenges and possible responses, offering information and perspectives from their agencies' varied fields of expertise.  *See, e.g.*, Supp. Compl. ¶ 57 (describing second meeting, where members discussed ways for agencies to reduce emissions); The White House, *Readout of the Fourth National Climate Task Force Meeting* (describing discussion of "near-term readiness plans in the face of extreme weather risks, and . . . long-term resilience measures").  The Task Force has also provided a forum for members to highlight their agencies' climate-policy work, with members taking the opportunity to announce new climate-related initiatives at or after Task Force meetings.  *See, e.g.*, Supp. Compl. ¶ 57 (describing new investments by the Department of Agriculture in the Land and Water Conservation Fund).  And beyond its meetings, the Task Force has provided direct support to the President, including by providing him with assessments of the opportunities to combat climate change and recommending benchmarks to ensure that the United States will meet the President's goal of reaching net-zero greenhouse gas

emissions by no later than 2050.  *See, e.g.*, The White House, *FACT SHEET: President Biden Sets 2030 Greenhouse Gas Pollution Reduction Target Aimed at Creating Good-Paying Union Jobs and Securing U.S. Leadership on Clean Energy Technologies* (Apr. 22, 2021), https://perma.cc/TBX5-49SQ (describing a "government-wide assessment" that was "organized through [the President's] National Climate Task Force" to help establish a new 2030 target for reductions in greenhouse-gas pollution); *see also* Supp. Compl. ¶¶ 41–43.

## III.    Plaintiff's FOIA Requests

In the operative complaint, Plaintiff alleges that, on February 17, 2021, it sent a FOIA request to the White House, requesting that Ms. McCarthy and the Task Force provide copies of certain documents related to the Task Force's first meeting on February 11, 2021.  *See* Supp. Compl. ¶ 48.  Specifically, Plaintiff alleges that it sought:

> a. Any transcript of the meeting;
>
> b. Any documents shared at the meeting;
>
> c. Any records of communications by members of the National Climate Task Force concerning the meeting; and
>
> d. Any records of communications by the Task Force with people who are not employees or officers of the federal government.

*Id*.  United States Postal Service records show that Plaintiff's request was delivered to the White House on February 25, 2021.  *See id.* ¶ 50.  Neither Ms. McCarthy nor the Task Force has responded to Plaintiff's request.  *See id.* ¶ 51.

Plaintiff alleges that it sent subsequent FOIA requests on March 23, 2021 to the Offices of the Secretary of Commerce and the Administrator of the EPA.  *See id.* ¶¶ 62, 70.  Those requests sought "all emails" between the Secretary of Commerce, the Administrator of the EPA, and their immediate staff, and Ms. McCarthy or other members of the Task Force.  *Id.* ¶¶ 63, 71.  And in May 2021, Plaintiff sent substantially similar requests to the Department of Housing and Urban

Development, the Department of Transportation, the Department of Energy, the General Services Administration, the Office of Management and Budget, the Office of Science and Technology Policy, the Department of the Treasury, the Department of Defense, the Department of Justice, the Department of Labor, the Department of Health and Human Services, and the Department of Homeland Security. *See id.* ¶¶ 78–88. These subsequent FOIA requests are not the subject of this motion.

## PROCEDURAL HISTORY

Plaintiff filed this action on May 6, 2021. *See* ECF No. 1. On June 14, Defendants moved to dismiss the complaint in part, pointing out that Plaintiff had failed to state a claim under FOIA against Ms. McCarthy and the National Climate Task Force. *See* ECF Nos. 6, 6-1. Rather than oppose Defendants' motion, Plaintiff filed an amended complaint on June 28. *See* ECF No. 7. In the amended complaint, Plaintiff clarified that it had sued Ms. McCarthy "in her capacity as chair of the National Climate Task Force," *id.* at 1, and it augmented its allegations regarding the activities of the Task Force, describing two meetings that occurred after the one that is the focus of its FOIA request to the Task Force and Ms. McCarthy, *see id.* ¶¶ 43–47. Because none of those amendments fixed the fundamental defects in Plaintiff's original complaint, Defendants again moved to dismiss Plaintiff's claims against Ms. McCarthy and the Task Force. *See* ECF Nos. 12, 12-1. Plaintiff subsequently sought leave of the Court to file a supplemental complaint, adding the agency recipients of its May 2021 FOIA requests as defendants in this case. *See* ECF Nos. 16, 16-1. The Court granted leave for Plaintiffs to file a supplemental complaint and, given the existence of a "newly operative pleading," allowed Defendants to refile their motion to dismiss the claims against Ms. McCarthy and the Task Force by October 28, 2021. *See* ECF No. 19, at 4, 8. Accordingly, Defendants now renew that motion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action when a complaint fails to "state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twonbly*, 550 U.S. 544, 570 (2007)).  The facts alleged "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).  In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters of which the court may take judicial notice.  *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## ARGUMENT

### I.  Gina McCarthy, as an individual official within in the White House Office, is not subject to FOIA.

As an initial matter, the law is clear that "[i]ndividual federal officials are not proper defendants in a FOIA action because it is the *agency's* responsibility to produce records." *Jefferson v. Reno*, 123 F. Supp. 2d 1, 3 (D.D.C. 2000) (citing 5 U.S.C. § 552(a)(4)(B)).  Thus, the D.C. Circuit has repeatedly found that district courts should dismiss individual defendants when they are named in FOIA actions.  *See, e.g.*, *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) ("[T]he district court properly dismissed the named individual defendants because no cause of action exists that would entitle appellant to relief from them under the Privacy Act or FOIA.");

*Sanders v. U.S. Dep't of Justice*, No. 10-5273, 2011 WL 1769099, at *1 (D.C. Cir. Apr. 21, 2011) (*per curiam*) (claims against individual defendants are not cognizable under FOIA); *Voinche v. Obama*, 428 F. App'x 2, 3 (D.C. Cir. 2011) ("[C]laims asserted against individual defendants are not cognizable under FOIA, so the district court properly dismissed those claims."). For this reason alone, Plaintiff's claims against Ms. McCarthy must be dismissed.

Despite this clear rule, Plaintiff continues to press its claim against Ms. McCarthy, maintaining in the supplemental complaint that she is sued "in her capacity as chair of the National Climate Task Force." *See* Supp. Compl. at 1. But an official's "capacity" is immaterial for purposes of suits under FOIA; individuals cannot be sued under FOIA even if their employer might be. *See Martinez*, 444 F.3d at 624 (finding that FOIA "concern[s] the obligations of agencies as distinct from individual employees in those agencies").

Even if one were to (improperly) equate Ms. McCarthy with her office, she would still be subject to dismissal. As the National Climate Advisor, Ms. McCarthy occupies a position within the White House Office. *See* E.O. 14008 § 202 (establishing the Office of Domestic Climate Policy within the White House); *cf.* Message of the President, Reorganization Plan No. 1 of 1977, 5 U.S.C. App. 1 (July 15, 1977) ("The White House Office concentrates on close personal support including policy and political advice and administrative and operational services."). And as this Court has put it, "entities within the White House Office are not agencies subject to FOIA regardless of how they function." *Democracy Forward Found. v. White House Off. of Am. Innovation*, 356 F. Supp. 3d 61, 66 (D.D.C. 2019) (Kollar-Kotelly, J.); *see also Sculimbrene v. Reno*, 158 F. Supp. 2d 26, 36 (D.D.C. 2001) (Kollar-Kotelly, J.) ("The term 'agency,' as it is defined in 5 U.S.C. § 552(f), has been interpreted clearly to exclude the White House Office."). Thus, persons and sub-offices within the White House Office are precisely those that are categorically exempt from FOIA. *See*

—8—

*Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980); *Meyer v. Bush*, 981 F.2d 1288, 1293 n.3 (D.C. Cir. 1993) (finding that an assessment of functions is relevant only to the status of "*other* units" in the EOP besides the White House Office).   That Ms. McCarthy's position as National Climate Advisor might require her to work with individuals outside of the White House Office does not change the analysis:   The D.C. Circuit has rejected such an "on-again, off-again approach to FOIA."  *Meyer*, 981 F.2d at 1292 n.2; *see also Ryan v. Dep't of Justice*, 617 F.2d 781, 788 (D.C. Cir. 1980) ("[D]epending on its general nature and functions, a particular unit is either an agency or it is not. . . .[T]his determination will not vary according to its specific function in each individual case.").  For her part, then, Ms. McCarthy is excluded from the requirements of FOIA.[3]

## II.   The National Climate Task Force is not an agency subject to FOIA.

### A.   FOIA does not apply to EOP components that lack substantial independent authority and exist solely to advise and assist the President.

FOIA requires that "agenc[ies]" must "make available to the public" certain records upon request.  5 U.S.C. § 552(a)(3)(A).   FOIA's definition of a covered "agency," however, is not boundless.  And if an entity falls outside the FOIA definition of "agency," then it is not subject to FOIA and cannot be sued for failure to comply with FOIA's disclosure requirements.  *See CREW v. Off. of Admin.*, 566 F.3d 219, 226 (D.C. Cir. 2009).

As a general matter, FOIA defines an "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency" other than

---

[3] Moreover, as indicated by her full title—Assistant to the President and National Climate Advisor, *see* E.O. 14008 § 202—Ms. McCarthy's sole official function is to advise and assist the President.  Thus, for reasons explained *infra* Section II.A., even if she were not categorically exempt from FOIA based on her status as an individual and her position in the White House Office, Ms. McCarthy still would be exempt based on the functions of her office.  *Cf. Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 558 (D.C. Cir. 1996) (concluding National Security Council staff are not subject to FOIA because they do not perform significant non-advisory functions).

Congress, the federal courts, and the governments of the District of Columbia or United States

territories or possessions.  5 U.S.C. § 551(1).  In another provision, Congress has further specified

that this definition "includes any executive department, military department, Government corpo-

ration, Government controlled corporation, or other establishment in the executive branch of the

Government (including the Executive Office of the President), or any independent regulatory

agency."  5 U.S.C. § 552(f)(1).  Nevertheless, important limits have been established through ju-

dicial decisions interpreting FOIA in light of Congress's intent and general separation-of-powers

principles.

In *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971), the D.C. Circuit considered whether

the Office of Science and Technology (OST) qualified as an "agency" under Section 551(1).  Ac-

knowledging that "[t]he statutory definition of 'agency' is not entirely clear," the court found that

FOIA applies to "any administrative unit with substantial independent authority in the exercise of

specific functions."  *Id.* at 1073.  This standard necessarily was a functional one, intended "to avoid

the serious constitutional questions that would be presented if it were necessary for the court to

consider whether the disclosure provisions of the Act exceeded the constitutional power of Con-

gress to control the actions of the [E]xecutive [B]ranch."  *Judicial Watch, Inc. v. U.S. Secret Serv.*,

726 F.3d 208, 227 (D.C. Cir. 2013).

Applying this standard to the OST, an office organized within the Executive Office of the

President but with statutory authority to carry out the "function of evaluating federal programs,"

the D.C. Circuit in *Soucie* found the OST to be an agency subject to FOIA.  448 F.2d at 1075.

Critically, the presence of a statutory delegation of authority to evaluate federal programs meant

that Congress had "delegat[ed] some of its own broad power of inquiry" to the OST.  *Id.*  This

delegation imbued the OST with "substantial independent authority."  *Id.*  And that was sufficient

to distinguish the OST from other Executive Branch entities whose "sole function" was to "advise and assist the President."[4] *Id.*

*Soucie*'s functional approach remains the touchstone for identifying FOIA agencies today. When Congress enacted Section 552(f)(1) in 1974, it sought to codify the D.C. Circuit's decision in *Soucie*. *See* S. Conf. Rep. No. 93-1200, at 15 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6293 ("The term ['agency'] is not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President."). The Supreme Court later relied on this expressed intent by Congress, rejecting a FOIA claim for notes made by Henry Kissinger in his role as the President's National Security Advisor on the basis that "'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President' are not included within the term 'agency'" as used in FOIA. *Kissinger*, 445 U.S. at 156 (quoting H.R. Conf. Rep. No. 93-1380, at 15 (1974)). The D.C. Circuit has followed suit, hewing closely to its original formulation of the test in *Soucie*. *See Armstrong*, 90 F.3d at 558 (factors to consider in identifying FOIA agencies include "(1) 'how close opera-tionally the group is to the President,' (2) 'whether it has a self-contained structure,' and (3) 'the nature of its delegated' authority." (quoting *Meyer*, 981 F.2d at 1293)).

For components of the EOP, the D.C. Circuit has emphasized that the core consideration is whether the entity at issue "wield[s] substantial authority independently of the President." *CREW*, 566 F.3d at 222 (internal quotation marks omitted) ("However the test has been stated, common to every case in which we have held that an EOP unit is subject to FOIA has been a finding that the

---

[4] Also relevant was the OST's past practice, which included publishing a notice in the Fed-eral Register under its own name regarding planned procedures for complying with FOIA, sug-gesting that it viewed itself as an agency subject to FOIA. *Soucie*, 448 F.2d at 1075.

entity in question 'wielded substantial authority independently of the President.'" (quoting *Sweet-land v. Walters*, 60 F.3d 852, 855 (D.C. Cir. 1995))).   If, instead, the component only serves to advise and assist the President as he develops and implements his policy agenda, then that component does not qualify as an agency for FOIA purposes.   *Cf. Meyer*, 981 F.2d at 1298 (finding no agency where cabinet-level officials "convened periodically both to bring together the views of various cabinet department heads concerning significant proposed regulations, and to shape" policy disputes "for the President's decision").

> **B.   The National Climate Task Force lacks substantial independent authority and exists solely to advise and assist the President.**

Plaintiff's allegations as to the Task Force do not satisfy the test for FOIA agency status; at best, they detail only that the Task Force acts to advise and assist the President.   Because the supplemental complaint does not plausibly allege that the Task Force wields substantial authority independently of the President, and because the Task Force functions solely to advise and assist the President, Plaintiff's claims against the Task Force should be dismissed.

As alleged in the supplemental complaint, President Biden established the Task Force and assigned it a number of coordinating functions.   *See* Supp. Compl. ¶¶ 36–37; E.O. 14008 § 203(b), 86 Fed. Reg. at 7623.   Consistent with the President's policy agenda, the Task Force is to "facilitate the organization and development of a Government-wide approach to combat the climate crisis." Supp. Compl. ¶ 37.   President Biden further directed the Task Force to "facilitate planning and implementation" of key actions by the federal government in order to, *inter alia*, reduce climate pollution, increase climate resilience, and deliver environmental justice.   *Id.* ¶ 38.

Critically, though, the authority that the Task Force has to engage in its activities stems solely from the President, as outlined in E.O. 14008.   *See* E.O. 14008 § 203(b), 86 Fed. Reg. at 7623.   And in conducting its activities, the Task Force acts solely on behalf of the President, not

pursuant to or at the direction of any independent source of authority. *See id.* Thus, the Task Force lacks the substantial independent authority necessary to be considered an agency under FOIA. Instead, it exists solely to advise and assist the President as *he* "launches a whole-of-government process" to confront the climate crisis by, for example, establishing new greenhouse-gas emissions targets for the United States. *See* The White House, *FACT SHEET: President Biden Sets 2030 Greenhouse Gas Pollution Reduction Target Aimed at Creating Good-Paying Union Jobs and Securing U.S. Leadership on Clean Energy Technologies* (Apr. 22, 2021), https://perma.cc/TBX5-49SQ. "[U]ltimate authority to set objectives, determine policy, and establish programs rests elsewhere." *Armstrong*, 90 F.3d at 564.

*Meyer v. Bush*, 981 F.2d 1288, in which the D.C. Circuit found that President Reagan's Task Force on Regulatory Relief lacked agency status under FOIA, makes plain the deficiencies of Plaintiff's claims. Similar to the National Climate Task Force, the Reagan Task Force's membership consisted of high-ranking Executive Branch officials, ranging from the Vice President and several officials in the EOP to various heads of departments. *See id.* at 1289. And much like the National Climate Task Force, the Reagan Task Force played an important role in enacting the President's policy agenda. In particular, the Reagan Task Force was directed to oversee a new, government-wide regulatory review process established by Executive Order 12291. *Id.* at 1289–90; *see also* E.O. 12291, *Federal Regulation*, 46 Fed. Reg. 13193 (Feb. 17, 1981). Virtually all meaningful aspects of the regulatory review process—including, for example, setting criteria for the selection of proposed regulations for review and preparing "uniform standards" for agency cost-benefit analysis, were "subject to the direction of the [Reagan] Task Force." E.O. 12291 §§ 3(b), 6(a)(2). Further, the Reagan Task Force was also authorized by executive order to resolve "any issues raised" in the inter-agency review process. *Id.* § 2(e)(1).

—13—

Still, the D.C. Circuit concluded that the Reagan Task Force lacked "substantial independent authority," and was not an agency under FOIA. *Meyer*, 981 F.2d at 1297–98. For one, the Reagan Task Force lacked the sort of "definite structure" that might indicate agency status. *Id.* at 1296. In particular, the Reagan Task Force's "lack of a separate staff"—it operated out of the office of its chair, the Vice President, and borrowed personnel from OMB on an as-needed basis—offered a "strong indicator" that it was not an independent actor distinct from the President. *Id.* Further, President Reagan had appointed to his Task Force officials who reported directly to him; their proximity to the President suggested that, when acting as the Task Force, they were acting as "functional equivalents of assistants to the President," *id.* at 1294, and would not exercise any delegated authority "unless they already knew the President's views," *id.* at 1295. Most important of all, though, was the limited scope of authority that the President had assigned to the Task Force. Despite its role in overseeing the regulatory-review process and providing guidance to the agencies involved, the Reagan Task Force was not authorized to give directions to anyone in the Executive Branch independently of the President. *See, e.g.*, *id.* at 1294 ("When the Task Force wished directions given to the [E]xecutive [B]ranch, it found it necessary to advise the President to put such instructions in another Executive Order."). Thus, though each individual member "wielded great authority" in their other capacities, there was "no indication that when acting as the Task Force they were to exercise substantial independent authority." *Id.* at 1297. Wary of adopting a rule that would create an agency anytime the President convened "a group of cabinet officers and perhaps White House staff in some sort of committee . . . to screen . . . regulatory issues," the D.C. Circuit concluded that the Reagan Task Force was not a FOIA agency. *Id.* at 1296.

Courts continue to follow the approach of the D.C. Circuit in *Meyer*, finding that entities established to advise and assist the President in his duties—even ones that are seemingly powerful

and deal with significant policy issues—do not qualify as an "agency" under FOIA.  *See, e.g.*, *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 552 (2d Cir. 2016) (National Security Council not an agency); *CREW*, 566 F.3d at 224 (White House Office of Administration not an agency); *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 310 F. Supp. 2d 271 (D.D.C. 2004), *aff'd in part, rev'd in part and remanded*, *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125 (D.C. Cir. 2005) (National Energy Policy Development Group, a group of White House officials and cabinet-level officials that was established within the EOP to gather information and provide the President with recommendations on national energy policy, not an agency); *Armstrong*, 90 F.3d at 556 (National Security Council not an agency); *Sweetland*, 60 F.3d at 855 (Executive Residence not an agency); *Rushforth v. Council of Econ. Advisers*, 762 F.2d 1038, 1043 (D.C. Cir. 1985) (Council of Economic Advisers not an agency).  In some instances, courts have emphasized when entities lack "statutory grants of authority," and thus note that whatever power such entities have does not "flow from a source *independent* from the President."  *Main St. Legal Servs.*, 811 F.3d at 558 (emphasis added); *see also Soucie*, 448 F.2d at 1074 (finding an agency where *Congress* had "delegat[ed] some of its own broad power of inquiry," and so had bestowed "substantial independent authority").  Indeed, some courts have questioned "whether a President can ever be said to have delegated his own authority in a way that renders it truly independent of him."  *Main St. Legal Servs.*, 811 F.3d at 558.  After all, when the President establishes an entity within the White House, he retains the authority to dissolve the entity, or overrule its action, at any point that he deems appropriate.  *See id.* (noting that the President "can revoke a delegation whenever he changes his mind or overrule any exercise with which he disagrees").

Given these standards, Plaintiff has failed to plausibly allege that the Task Force is an agency subject to FOIA.  No statute establishes the Task Force, nor does any statute delegate any

legislative authority to it.  Instead, the supplemental complaint makes clear that whatever authority the Task Force possesses flows solely and directly from the President, via Executive Order 14008 and any other future directives that the President may issue.  *See* Supp. Compl. ¶¶ 35–39.  Further, the Task Force's proximity to the President is clear:  Many of its members are White House officials, all report to the President, and its chair is a member of the President's immediate personal staff.  *See* E.O. 14008 § 203(a), 86 Fed. Reg. at 7623; *see also Meyer*, 981 F.2d 1297 (suggesting that involvement of White House staff on a cabinet-level task force would indicate non-agency status); *Legal Eagle, LLC v. Nat'l Sec. Council Recs. Access & Info. Sec. Mgmt. Directorate*, No. 20-cv-1732-RC, 2021 WL 1061222, at *3 (D.D.C. Mar. 18, 2021) (finding component of the National Security Council is not an agency in part because "the National Security Adviser, working in close contact with and under the direct supervision of the President, controls the NSC staff").  And like the Reagan Task Force in *Meyer*, the National Climate Task Force's founding document, E.O. 14008, provides it with no sufficiently firm structure or dedicated staff; instead, it must rely entirely on its members—all agency heads and White House personnel—and *their* staff in carrying out its mission.  *See* E.O. 14008 § 203(a), 86 Fed. Reg. at 7623; Supp. Compl. ¶ 36; *see also Judicial Watch, Inc*., 310 F. Supp. 2d at 284 (National Energy Policy Development Group, for which daily operations were performed by "federal employees assigned from their respective agencies and departments," was not an agency).  All of this is apparent from the supplemental complaint, government documents subject to judicial notice, and similar sources incorporated into the supplemental complaint.

Taken together, these facts lead to a clear conclusion:  The Task Force lacks any substantial authority that it may exercise independently from the President himself.  *Cf. Armstrong*, 90 F.3d at 565 (finding no agency status where a unit of the Executive Office of the President does not "play[]

a substantive role apart from that of the President, as opposed to a coordinating role on behalf of the President").  In fact, its sole function, as shown by the supplemental complaint and materials of which the Court may take judicial notice, is to advise and assist the President in his management of the Executive Branch, specifically by coordinating the activities of its members' agencies in a manner that facilitates and promotes the President's "Government-wide approach to combat the climate crisis."  E.O. 14008 § 203(b), 86 Fed. Reg. at 7623.  That is a project that, as a matter of legal authority, the President could have accomplished himself, by calling together all of the members of the Task Force for regular meetings with him.  *See Armstrong*, 90 F.3d at 561 ("[T]o the extent that the NSC assists the President in coordinating the activities of the various agencies with national security responsibilities, it exercises no authority of its own."); *Main St. Legal Servs.*, 811 F.3d at 558 (coordinating the "consistent implementation of the President's policy decisions . . . across government departments" provides assistance to the President).  The President's choice to convene his subordinates in the form of a Task Force, chaired by a member of his immediate White House staff, does not trigger FOIA's provisions.  *Accord Meyer*, 981 F.2d at 1297 (stating that a contrary reading of FOIA "empties the word 'assist' in the *Soucie* test of all meaning").

It also matters not, contrary to Plaintiff's protestations, *see* Supp. Compl. ¶ 40, that the President has assigned to the Task Force an important practical role in the coordination of federal climate policy.  For one, there is no indication in the supplemental complaint or any of the documents it cites that the Task Force, which is chaired by an Assistant to the President, *see* E.O. 14008 § 202, engages in any of its activities "without the knowledge and consent of the President."  *Democracy Forward Found.*, 356 F. Supp. 3d at 72.  And though members of the Task Force may discuss actions by their respective departments during Task Force meetings, *see, e.g.*, Supp. Compl. ¶ 59, that does not plausibly suggest that "ultimate authority to set objectives, determine

policy, and establish programs," *Armstrong*, 90 F.3d at 564, rests with the Task Force itself.  More-over, numerous EOP entities, such as the National Security Council, play significant roles in for-mulating and coordinating government policies, but they are not "agencies" for FOIA purposes. *Cf. Main Street Legal Servs.*, 811 F.3d at 562 ("[E]xecutive orders providing for the NSC to for-mulate or give policy direction . . . do not reach beyond the NSC's advisory coordinating func-tion."); *Judicial Watch, Inc.*, 412 F.3d at 129–30 (National Energy Policy Development Group not an agency despite playing an important role in the formulation of policy).  Indeed, as this Court has previously recognized, allegations that an entity is engaged in developing policy are insuffi-cient to plausibly allege that that entity is independent of the President or doing anything more than assisting in the implementation of the President's initiatives.  *See Democracy Forward Found.*, 356 F. Supp. 3d at 70.  If anything, "participating in developing and drafting . . . policy released by the White House . . . strengthens the argument that the [Task Force's] primary function is to assist and advise the President." *Id.* at 71; *cf.* Supp. Compl. ¶ 41 (describing the President's adoption of new greenhouse gas pollution targets that were originally developed by the Task Force).

In short, the supplemental complaint establishes only that the National Climate Task Force operates to advise and assist the President, at his behest, when it engages in the activities alleged; it contains no well-pleaded allegations that the Task Force exercises substantial authority inde-pendent of the President.  Therefore, the Court should dismiss Plaintiff's claims against the Task Force on the ground that it is not an agency subject to FOIA.

## CONCLUSION

Because neither Gina McCarthy nor the National Climate Task Force are subject to suit under FOIA, Plaintiff's claims against them should be dismissed for failure to state a claim.

—18—

Dated:  October 28, 2021                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Acting Assistant Attorney General

                                            ELIZABETH J. SHAPIRO
                                            Deputy Director

                                            */s/ Cody T. Knapp*
                                            CODY T. KNAPP, #5715438 (NY)
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street NW
                                            Washington, DC 20005
                                            Tel.:  (202) 532-5663
                                            E-mail:  cody.t.knapp@usdoj.gov

                                            *Counsel for Defendants*