IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE, <br><br> *Plaintiff*, <br><br> v. <br><br> JOHN PODESTA, in his capacity as chair of the National Climate Task Force, *et al*., <br><br> *Defendants*. | Case No. 1:21-cv-1238-CKK |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRESERVATION OF GINA MCCARTHY'S RECORDS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARDS ......................................................................................................... 4

ARGUMENT ......................................................................................................................... 5

    I.  CEI has not met its burden to justify a preservation order. ................................... 5

        A.  CEI is not likely to succeed on the merits of its claims regarding Ms. McCarthy's records. .................................................................................. 5

        B.  CEI has not raised a serious legal question concerning preservation. ........... 6

        C.  CEI does not face any irreparable harm. ....................................................... 9

        D.  The balance of harms and the public interest weigh against a preservation order. ..... 10

    II.  CEI's alternative standards do not lead to a different result. ................................ 11

    III.  CEI's request for an injunction pending appeal is premature and meritless. ..... 12

CONCLUSION .................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Aamer v. Obama*,
   742 F.3d 1023 (D.C. Cir. 2014) ............................................................................................... 6

*\*Abdullah v. Obama*,
   753 F.3d 193 (D.C. Cir. 2014) ................................................................................................. 4

*Armstrong v. Bush*,
   924 F.2d 287 (D.C. Cir. 1991) ............................................................................................... 11

*\*Armstrong Cork Co. v. Lyons*,
   366 F.2d 206 (8th Cir. 1966) ................................................................................................. 11

*\*Bracy v. Gramley*,
   520 U.S. 899 (1997) ................................................................................................................ 7

*Capricorn Power Co. v. Siemens Westinghouse Power Corp.*,
   220 F.R.D. 429 (W.D. Pa. 2004) ........................................................................................... 12

*Cause of Action Inst. v. DOJ*,
   No. 18-cv-01800 (APM), 2019 WL 12070403 (D.D.C. Apr. 25, 2019) .................................. 4

*\*CEI v. OSTP*,
   No. 14-cv-765-GK, 2016 WL 10676292 (D.D.C. Dec. 12, 2016) ........................................... 4

*Changji Esquel Textile Co. v. Raimondo*,
   40 F.4th 716 (D.C. Cir. 2022) .................................................................................................. 4

*\*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ................................................................................................. 9

*CREW v. Office of Administration*,
   593 F. Supp. 2d 156 (D.D.C. 2009) ....................................................................................... 13

*CSL Plasma Inc. v. U.S. Customs & Border Prot.*,
   --- F. Supp. 3d ----, 2022 WL 4289580 (D.D.C. Sept. 16, 2022) ............................................ 5

*\*Dean v. DOJ*,
   No. 16-5137, 2016 WL 7438663 (D.C. Cir. Dec. 21, 2016) .................................................... 8

*\*Filazapovich v. Dep't of State*,
   560 F. Supp. 3d 203 (D.D.C. 2021) .................................................................................. 5, 10

*\*Friends of Animals v. U.S. Bureau of Land Mgmt.*,
   232 F. Supp. 3d 53 (D.D.C. 2017) ......................................................................................... 10

*Humble Oil & Ref. Co. v. Harang*,
   262 F. Supp. 39 (E.D. La. 1966) .............................................................................................. 4

*Judicial Watch, Inc. v. U.S. DOJ*,
   No. 1:18-cv-154-RBW (Nov. 13, 2018), ECF No. 18 ............................................................. 4

*Kissinger v. Reporters Comm.*,
  445 U.S. 136 (1980) .................................................................................................. 5, 11

*Madden v. Wyeth*,
  No. 03-cv-0167-R, 2003 WL 21443404 (N.D. Tex. Apr. 16, 2003) ............................ 4

\**Missouri v. Biden*,
  --- F.4th ----, 2022 WL 12230261 (8th Cir. Oct. 21, 2022) ....................................... 5

\**NARA v. Favish*,
  541 U.S. 157 (2004) ..................................................................................................... 7

*O.K. v. Bush*,
  No. 04-cv-1136-JDB, 2005 WL 8177541 (D.D.C. Oct. 27, 2005) ............................ 4

\**Oklahoma v. Biden*,
  577 F. Supp. 3d 1245 (W.D. Okla. 2021) ................................................................. 5

*Pueblo of Laguna v. United States*,
  60 Fed. Cl. 133 (2004) ...............................................................................................11

\**Rodden v. Fauci*,
  571 F. Supp. 3d 686 (S.D. Tex. 2021) ...................................................................... 5

*Sherley v. Sebelius*,
  644 F.3d 388 (D.C. Cir. 2011) .................................................................................. 4

*United States ex rel. Staggers v. Medtronic, Inc.*,
  No. 1:15-cv-392-TSC-RMM, 2022 WL 4078969 (D.D.C. Sept. 6, 2022) ........... 4, 12

*United States v. Armstrong*,
  517 U.S. 456 (1996) ..................................................................................................... 7

\**United States v. Chemical Foundation, Inc.*,
  272 U.S. 1 (1926) ........................................................................................................ 8

\**United States v. Sum of $70,990,605*,
  No. 12-cv-1905, 2015 WL 1021118 (D.D.C. Mar. 6, 2015) .................................... 10

\**Valencia-Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) .................................................................................. 8

*Wadelton v. Dep't of State*,
  106 F. Supp. 3d 139 (D.D.C. 2015) ..........................................................................11

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841 (D.C. Cir. 1977) ................................................................................. 10

*Wisconsin Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) .............................................................................. 9, 10

\**Wright v. Admin. for Child. & Fams.*,
  No. 15-cv-218, 2016 WL 5922293 (D.D.C. Oct. 11, 2016) ...................................... 8

*Zeynali v. Blinken*,
  No. 22-cv-2683-BAH, 2022 WL 4462304 (D.D.C. Sept. 26, 2022) .......................................... 5

**Statutes**

28 U.S.C. § 1292(b) ..................................................................................................................... 13

**Other Authorities**

The White House, *President Biden Announces Senior Clean Energy and Climate Team*
  (Sept. 2, 2022), https://perma.cc/3A22-XRQF ........................................................................ 3

**Rules**

Federal Rule of Civil Procedure 25(d) ........................................................................................... 3
Federal Rule of Civil Procedure 54(b) ......................................................................................... 13

## INTRODUCTION

Plaintiff Competitive Enterprise Institute (CEI) has filed a motion to compel preservation, seeking an order requiring Defendants to "search for and preserve copies of Ms. McCarthy's records" to the extent that she retains records "responsive to CEI's FOIA requests or otherwise relevant to this lawsuit." Plaintiff's Motion to Compel ("Pl.'s MTC"), ECF No. 24, at 15. CEI further seeks an order requiring Ms. McCarthy "to cooperate with Defendants" in their searches, "preserve all relevant records, and attest to" the completeness of any preservation efforts. *Id.* But all relevant factors weigh squarely against the issuance of a preservation order in this case.

First, CEI is not likely to succeed on the merits of its FOIA claim for records held by Ms. McCarthy. She and the National Climate Task Force that she led until September 2022 are not subject to FOIA. To the extent that any records held by Ms. McCarthy might be both subject to FOIA *and* responsive to CEI's requests, there is no reason to believe that those records have not been preserved by a proper Defendant. And the Task Force's decision not to conduct a search of Ms. McCarthy's records in response to CEI's FOIA request does not suggest a need for preservation, particularly given that most of the records that CEI seeks are substantially likely to be held (and produced, if they exist and are not exempt from production) by other Defendants in this case.

Second, CEI is unlikely to suffer irreparable harm in the absence of a preservation order. Records held by Ms. McCarthy that might be responsive to CEI's FOIA request are already preserved in the ordinary course pursuant to the Presidential Records Act (PRA). CEI offers only rank speculation to suggest that proper recordkeeping procedures will not be followed.

Finally, the balance of harms and the public interest disfavor a preservation order in the circumstances presented here. The preservation order that CEI seeks would impose unjustified burdens on Ms. McCarthy in her capacity as a private citizen, requiring her to submit to potentially

1

intrusive searches of her personal devices. And given the absence of any credible indication of spoliation, a preservation order would be inconsistent with the proper separation of powers and invite unwarranted judicial interference in White House recordkeeping. These factors collectively—and decisively—demonstrate that a preservation order is inappropriate here. The Court should deny CEI's motion.

## BACKGROUND

In the operative complaint, CEI alleges that, on February 17, 2021, it sent a FOIA request to the White House, requesting that Ms. McCarthy and the Task Force provide copies of certain documents related to the Task Force's first meeting on February 11, 2021. *See* Supp. Compl., ECF No. 16-1, ¶ 48. Specifically, CEI alleges that it sought:

> a. Any transcript of the meeting;
>
> b. Any documents shared at the meeting;
>
> c. Any records of communications by members of the National Climate Task Force concerning the meeting; and
>
> d. Any records of communications by the Task Force with people who are not employees or officers of the federal government.

*Id*. *See id.* ¶ 50. Neither Ms. McCarthy nor the Task Force responded to CEI's request. *See id.* ¶ 51.

CEI alleges that it sent subsequent FOIA requests on March 23, 2021 to the Offices of the Secretary of Commerce and the Administrator of the EPA. *See id.* ¶¶ 62, 70. Those requests sought "all emails" between the Secretary of Commerce, the Administrator of the EPA, and their immediate staff, and Ms. McCarthy or other members of the Task Force. *Id.* ¶¶ 63, 71. Later, in May 2021, CEI sent substantially similar requests to the Department of Housing and Urban Development, the Department of Transportation, the Department of Energy, the General Services Administration, the Office of Management and Budget, the Office of Science and Technology Policy, the

2

Department of the Treasury, the Department of Defense, the Department of Justice, the Department of Labor, the Department of Health and Human Services, and the Department of Homeland Security. *See id.* ¶¶ 78–88.

CEI first filed this action on May 6, 2021. On June 14, 2021, Defendants moved to dismiss the complaint in part, pointing out that CEI had failed to state a claim under FOIA against Ms. McCarthy and the Task Force. *See* ECF Nos. 6, 6-1. Rather than oppose Defendants' motion, CEI filed an amended complaint on June 28, 2021. *See* ECF No. 7. Because amendment did not (and could not) fix the fundamental defects in CEI's original complaint, Defendants again moved to dismiss all claims against Ms. McCarthy and the Task Force. *See* ECF Nos. 12, 12-1. CEI subsequently sought leave of the Court to file a supplemental complaint, adding the numerous agency recipients of its May 2021 FOIA requests as Defendants in this case. *See* ECF Nos. 16, 16-1. The Court granted leave for CEI to file a supplemental complaint and, given the existence of a "newly operative pleading," allowed Defendants to refile their motion to dismiss the claims against Ms. McCarthy and the Task Force. *See* ECF No. 19, at 4, 8. Defendants refiled their motion to dismiss on October 28, 2021. *See* ECF No. 20. Defendants' motion to dismiss remains pending.

On September 16, 2022, Ms. McCarthy departed from her position at the White House. *See* The White House, *President Biden Announces Senior Clean Energy and Climate Team* (Sept. 2, 2022), https://perma.cc/3A22-XRQF. She was replaced as Chair of the Task Force by John Podesta, *see id.*, who now serves as the named Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

In light of Ms. McCarthy's departure from government service, CEI has filed a motion to compel the preservation of Ms. McCarthy's records to the extent they are relevant to CEI's FOIA requests. *See* ECF No. 24. Defendants now oppose that motion.

3

## LEGAL STANDARDS

Although "[t]here is a split of authority over the precise standard that a party seeking a preservation order must satisfy," *O.K. v. Bush*, No. 04-cv-1136-JDB, 2005 WL 8177541, at *1 (D.D.C. Oct. 27, 2005), the weight of authority in this Circuit holds that such motions are "subject to the same analytical framework as a motion for injunctive relief." *CEI v. OSTP*, No. 14-cv-765-GK, 2016 WL 10676292, at *2 (D.D.C. Dec. 12, 2016); *Judicial Watch, Inc. v. U.S. DOJ*, No. 1:18-cv-154-RBW (Nov. 13, 2018), ECF No. 18; *see also Cause of Action Inst. v. DOJ*, No. 18-cv-1800 (APM), 2019 WL 12070403, at *1 (D.D.C. Apr. 25, 2019) (applying injunctive relief standard); *Madden v. Wyeth*, No. 03-cv-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003) ("A motion to preserve evidence is an injunctive remedy and should issue only upon an adequate showing that equitable relief is warranted." (citing *Humble Oil & Ref. Co. v. Harang*, 262 F. Supp. 39, 42 (E.D. La. 1966))). "Under the injunctive relief framework, in determining whether a preservation order is warranted, the Court 'must consider (1) the likelihood that the party seeking the preservation order will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed; (3) the prospect that others will be harmed; and (4) the public interest.'" *United States ex rel. Staggers v. Medtronic, Inc.*, No. 1:15-cv-392-TSC-RMM, 2022 WL 4078969, at *6 (D.D.C. Sept. 6, 2022) (quoting *CEI*, 2016 WL 10676292, at *2). It is the movant's burden to show that "all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014).

"In the past, [the D.C. Circuit] has applied a 'sliding scale' approach under which 'a strong showing on one factor could make up for a weaker showing on another.'" *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) (quoting *Sherley v. Sebelius*, 644 F.3d 388,

4

392 (D.C. Cir. 2011)). "[T]hat approach is likely inconsistent with" recent Supreme Court decisions, and so courts more recently have declined to employ it. *Zeynali v. Blinken*, No. 22-cv-2683-BAH, 2022 WL 4462304, at *2 n.3 (D.D.C. Sept. 26, 2022). But even where the sliding-scale approach is used, courts "must be satisfied that the [movant has] established both a likelihood of success and irreparable harm to award injunctive relief." *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 223 (D.D.C. 2021); *see also CSL Plasma Inc. v. U.S. Customs & Border Prot.*, --- F. Supp. 3d ----, 2022 WL 4289580, at*4 (D.D.C. Sept. 16, 2022).

## ARGUMENT

I. **CEI has not met its burden to justify a preservation order.**

   A. **CEI is not likely to succeed on the merits of its claims regarding Ms. McCarthy's records.**

As detailed in the supplemental complaint, following the first meeting of the National Climate Task Force on February 11, 2021, CEI sent a FOIA request to Ms. McCarthy and the Task Force, seeking to obtain certain documents related to that meeting. Suppl. Compl. ¶¶ 47–48; *see generally id.* ¶¶ 44–50, 89–99. But as Defendants have explained in connection with their motion to dismiss, neither Ms. McCarthy nor the Task Force is subject to FOIA. *See* Def.'s MTD Br., ECF No. 20-1, at 7–21; Def.'s MTD Reply, ECF No. 22, at 3–16.[1] Because neither Ms. McCarthy

---

[1] This conclusion has only been reinforced following the close of briefing on Defendants' motion to dismiss. Since that time, multiple courts have found, at the pleadings stage, that prominent interagency groups convened by the President—which were also alleged to have authority over important areas of federal policymaking—do not possess such "substantial independent authority" that they plausibly may be considered an "agency" under the APA. *Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1262 (W.D. Okla. 2021) (finding that the Safer Federal Workforce Task Force "is not an agency as it has no substantial independent authority" (internal quotation marks omitted)); *see also Rodden v. Fauci*, 571 F. Supp. 3d 686, 690–91 (S.D. Tex. 2021) (suggesting the same and citing *Meyer v. Bush*, 981 F.2d 1288, 1297 (D.C. Cir. 1993)); *cf. Missouri v. Biden*, --- F.4th ----, 2022 WL 12230261, at *6 (8th Cir. Oct. 21, 2022) (cautioning that it would be an "extraordinary leap" and "encourage constant judicial interference with the President's exercise of his

5

nor the Task Force can be sued under FOIA, CEI is not entitled to have them produce the records that it requested. CEI thus cannot establish a likelihood of success on the merits of its FOIA claims against them. The failure to establish this "most important" factor for injunctive relief, *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014), is fatal to CEI's motion to compel preservation.

### B. CEI has not raised a serious legal question concerning preservation.

In its motion, CEI does not even address the threshold merits issue of whether Ms. McCarthy and the Task Force are subject to FOIA. Instead, CEI assumes that issue away and, in an attempt to water down the standard of review, claims to have "raise[d] a serious legal question about" two entirely separate issues: "whether Defendants have retained all records relevant to CEI's FOIA requests," Pl.'s MTC, at 6, and whether Defendants have conducted an adequate search, *see id.* at 9. But these contentions are meritless.

**1.** First, aside from CEI's mere say-so and conjecture, there is no basis on which to question Defendants' retention of relevant records. That is in part because the universe of records at issue is quite limited: CEI's FOIA request to Ms. McCarthy and the Task Force only sought documents related to the Task Force's first meeting on February 11, 2021, s*ee* Suppl. Compl. ¶¶ 44–48, namely "[a]ny transcript of the meeting," "[a]ny documents shared at the meeting," "[a]ny records of communications by members of the National Climate Task Force concerning the meeting," and "[a]ny records of communications by the Task Force with people who are not employees or officers of the federal government." Suppl. Compl. ¶ 48. Given the nature of that limited set of records, and in light of Ms. McCarthy's former position within the White House Office as National Climate Advisor, if such documents exist, then they constitute "Presidential records" that

---

executive power" to conclude that "the President's interagency working groups" are agencies under the APA (citing *Kissinger v. Reporters Comm.*, 445 U.S. 136, 155–58 (1980))).

are already preserved as a matter of course. *See* 44 U.S.C. § 2203(a); *see also* 44 U.S.C. § 2201(2) (defining Presidential records to mean "documentary materials, or any reasonably segregable portion thereof, created or received by . . . the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President"); *id.* § 2209(a) (providing that White House employees "may not create or send a Presidential or Vice Presidential record using a non-official electronic message account" unless they forward a complete copy of the record to an official electronic messaging account). Thus, contrary to CEI's assertions, there is no significant risk that "relevant records will be misplaced and lost forever," nor that "Ms. McCarthy may harbor the false belief that she need not preserve relevant records," nor still that records will be spoliated. Pl.'s MTC, at 9.

CEI contends that the Court should "discount" such assurances, *id.* at 10, but that would be inconsistent with the Supreme Court's repeated admonition that courts should ordinarily "presume that public officials have 'properly discharged their duties.'" *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (quoting *United States v. Armstrong*, 517 U.S. 456 (1996)). To rebut this presumption in the FOIA context, CEI would need to make a "meaningful evidentiary showing" that "would warrant a belief by a reasonable person that the alleged . . . impropriety might have occurred." *NARA v. Favish*, 541 U.S. 157, 175 (2004). But CEI's motion to compel is long on "suspicion," and short on "evidence." *Id.* at 174. The only basis that CEI presents for believing that Ms. McCarthy and the Task Force have not or will not properly maintain relevant records is a generic allegation that her "sudden departure from her position as National Climate Advisor," Pls.' MTC, at 6, "makes it more difficult for Defendants to . . . conduct a reasonable search for all

7

responsive records," *id.* at 7. That unsupported allegation cannot satisfy CEI's "burden to submit countervailing evidence" of improper action. *Wright v. Admin. for Child. & Fams.*, No. 15-cv-218, 2016 WL 5922293, at *8 (D.D.C. Oct. 11, 2016). Indeed, if routine transitions in government personnel were enough to support an allegation of negligent recordkeeping or spoliation, *see* Pl.'s MTC, at 9, then the "presumption of regularity," *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926), would be a dead letter, and preservation orders would become the rule, not the exception, in FOIA and all other litigation. Here, in view of the PRA's requirements, "agency records responsive to [CEI's] FOIA request would unlikely be located solely in [Ms. McCarthy's] personal accounts." *Wright*, 2016 WL 5922293, at *8. Accordingly, the Court should find that, notwithstanding Ms. McCarthy's departure from government service, "a search of those accounts [would be] unnecessary." *Id*.

**2.** There is similarly no basis for CEI's preservation concerns as to Defendants other than Ms. McCarthy and the Task Force. Taken at face value, CEI's motion was prompted by Ms. McCarthy's decision to step down from public office and the attendant "likelihood" CEI perceives "that some if not a substantial portion of Ms. McCarthy's records will be lost in the departure shuffle." Pl.'s MTC, at 5. But no other Defendant has any plausible obligation to search for or maintain records possessed by Ms. McCarthy because, for the time period relevant to CEI's FOIA requests, she was not employed by them. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 328 (D.C. Cir. 1999); *see also Dean v. DOJ*, No. 16-5137, 2016 WL 7438663, at *1 (D.C. Cir. Dec. 21, 2016) ("failure to contact former employees or employees of other agencies did not render the search inadequate"). Additionally, given that CEI's requests to the agency Defendants generally seek emails "between" Ms. McCarthy and relevant agency officials, it is unlikely that any

8

records responsive to those requests can be "found nowhere else" but "on personal devices" belonging to Ms. McCarthy. Pl.'s MTC, at 7. Accordingly, there is no need for any preservation order as to the agency Defendants in this case.

**3.** CEI's complaints about the adequacy of Defendants' search for responsive records, *see* Pl.'s MTC, at 8–9, are also red herrings. Although CEI argues that, by failing to process its FOIA request, Ms. McCarthy and the Task Force have violated the Federal Records Act, *see id.* at 8, no such claim appears in the supplemental complaint, and so it cannot provide a basis for the relief that CEI seeks. *See Armstrong Cork Co. v. Lyons*, 366 F.2d 206, 208 (8th Cir. 1966). Moreover, that the Task Force has not conducted a search for responsive records to date, *see id.* at 9, does not suggest any particular need for a preservation order now. Preservation is about ensuring the requested records are available *in the future* in the event that CEI ultimately establishes that the Task Force is an agency within the meaning of FOIA. Nothing requires the Task Force to have conducted a search in response to CEI's FOIA request even as it contests the validity of that request, and CEI cannot argue that the failure to do so somehow raises a preservation issue.

### C. CEI does not face any irreparable harm.

For substantially the same reasons that CEI has not raised a significant legal question concerning Defendants' preservation of records that may be responsive to its FOIA request, CEI has not established that it faces any imminent loss or destruction of responsive records. To meet the "high standard for irreparable injury," the D.C. Circuit requires a movant to show that the injury is "both certain and great; it must be actual and not theoretical," and that "[t]he injury complained of is of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Importantly, the movant must "substantiate the claim that irreparable injury is 'likely' to occur." *Id.* (citing *Washington*

9

*Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n.3 (D.C. Cir. 1977)). "Unsubstantiated and speculative allegations" will not do. *Friends of Animals v. U.S. Bureau of Land Mgmt.*, 232 F. Supp. 3d 53, 68 (D.D.C. 2017) (quoting *Wis. Gas Co.*, 758 F.2d at 674).

CEI's showing of imminent harm amounts to nothing more than speculation. Again, CEI invokes, as evidence of the imminent loss or destruction of relevant records, Ms. McCarthy's departure from government service. *See* Pl.'s MTC, at 11. But beyond that everyday occurrence, CEI offers no reason to suspect that Ms. McCarthy, a former Administrator of the EPA and career public servant, has made off with any of the records that CEI seeks or would otherwise have failed to ensure that those records were preserved properly in the ordinary course of her duties. In assessing the risk of loss, courts are "not predisposed to assume that the government would alter or destroy records in its possession absent a court order," so the "party seeking a preservation order against the government [must] make a credible showing of a significant risk of alteration or destruction." *United States v. Sum of $70,990,605*, No. 12-cv-1905, 2015 WL 1021118, at *2 (D.D.C. Mar. 6, 2015). CEI's rank speculation cannot satisfy that standard. This failure alone requires the denial of CEI's motion. *See Filazapovich*, 560 F. Supp. 3d at 223.

**D.   The balance of harms and the public interest weigh against a preservation order.**

In contrast with the absence of any harm CEI might face without a preservation order, such an order would impose undue burdens on Ms. McCarthy and impair the public's interest in maintaining the appropriate separation of powers. CEI apparently does not trust Ms. McCarthy to make proper decisions about which records are personal and which relate to her employment (and, more specifically, to CEI's FOIA request). *See* Pl.'s MTC, at 7 (suggesting that Defendants need a "way of controlling" Ms. McCarthy in order to ensure proper recordkeeping, and that Ms. McCarthy may misunderstand the differences between her own records and those belonging to her employer).

10

But having someone other than Ms. McCarthy search or review her personal devices, as CEI's requested relief would require, would be an unwarranted invasion of personal privacy, and also contrary to normal FOIA practices where individual agency employees are expected to determine the status of their own records. *See, e.g.*, *Wadelton v. Dep't of State*, 106 F. Supp. 3d 139, 148-49 (D.D.C. 2015) ("Many, if not most, FOIA searches are conducted by those who had a hand in creating the sought-for documents.").

Moreover, by imposing requirements on top of those instituted by the PRA, a preservation order would upset a carefully constructed statutory scheme that Congress intended to minimize outside interference and "ensure executive branch control over presidential records during the President's term of office." *Armstrong v. Bush*, 924 F.2d 287, 290 (D.C. Cir. 1991).  Upsetting that proper balance solely to assuage unfounded concerns about spoliation like those advanced here would undermine the public interest in the separation of powers and invite the imposition of widespread preservation obligations contrary to FOIA and its efficient administration. *Cf. Kissinger*, 445 U.S. at 153–54 (discussing the limitations of agencies' obligations when responding to FOIA requests).

II.     **CEI's alternative standards do not lead to a different result.**

Briefly, CEI suggests that its motion to compel might prevail if it were evaluated under two alternative standards of review governing motions to compel.  *See* Pl.'s MTC, at 12–13.  Pursuant to those standards, courts sometimes employ balancing tests to assess motions for a preservation order, focusing on (1) the likelihood that records will be lost absent a court order, and (2) any harms to the parties or other entities and individuals stemming from issuance of a preservation order.  *See, e.g.*, *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004) (requiring a party "seeking a preservation order [to] demonstrate that it is necessary and not unduly burdensome");

11

*Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433–34 (W.D. Pa. 2004) (weighing "the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence" against burdens associated with the preservation order); *see also United States ex rel. Staggers*, 2022 WL 4078969, at *2 (describing these alternative balancing tests). Because CEI appears to agree that the injunctive-relief standard is appropriate here, *see* Pl.'s MTC, at 4–5, the Court need not consider these alternative standards of review.

Even if the Court were to utilize one of the alternative standards referenced by CEI, it would make no difference, because both balancing tests lead to the same conclusion as the test for injunctive relief. First, CEI has not established that a preservation order is necessary to ensure the future availability of the records that it seeks to obtain from Ms. McCarthy. And second, CEI's requested preservation order would intrude on significant personal privacy interests of Ms. McCarthy, and on the prerogatives of the President to manage the handling of Presidential records as appropriate and consistent with the PRA, while providing only marginal reassurance to CEI that the requested records have been preserved. Because no harms are likely to arise from the absence of a preservation order, and because a preservation order would inflict undue burdens on Defendants, even the alternative balancing tests suggested by CEI militate against entry of a preservation order.

### III. CEI's request for an injunction pending appeal is premature and meritless.

CEI concludes its motion to compel with a request the Court "requir[e] Defendants [to] preserve all relevant records" in the event that it grants Defendants' pending motion to dismiss. *See* Pl.'s MTC, at 15. But this request, which would amount to an injunction pending appeal, is meritless and should not be granted.

For one thing, CEI's request is premature. This Court has not yet ruled on Defendants' motion to dismiss, so, at present, there is nothing for CEI to appeal. And even in the likely event that the Court grants Defendants' motion to dismiss, CEI would still be unable to appeal. Because Defendants have moved to dismiss the supplemental complaint only in part, this Court's ruling on that motion will not constitute a final, appealable order. And given the presence of the fourteen other Defendants in this case, and the need for further proceedings, it may be some time before this Court enters a final judgment. CEI might seek permission to take an interlocutory appeal, *see* 28 U.S.C. § 1292(b), or seek entry of a partial final judgment under Federal Rule of Civil Procedure 54(b). But each of those avenues will require further findings by the Court before any appeal may be taken. It would be inappropriate to entertain CEI's request for an injunction pending appeal before CEI's right to an take an appeal from any order granting Defendants' motion to dismiss ripens.

Setting aside that CEI's request for an injunction pending appeal comes too early, that request fares no better on the merits. In making its request, CEI likens this case to *CREW v. Office of Administration*, 593 F. Supp. 2d 156 (D.D.C. 2009), emphasizing that, in that case, this Court found an injunction was necessary to maintain the status quo. But *CREW* is distinguishable. There, the government had been under a preservation order for a majority of the litigation. *See id.* at 160–61. And pursuant to other interlocutory orders, the government had "already identified and segregated all documents it believe[d were] potentially responsive to CREW's FOIA requests." *Id.* at 161. Thus, granting an injunction pending appeal actually restored what had been the status quo for the duration of the litigation. Here, an injunction pending appeal would fundamentally transform the status quo by, for the first time, imposing preservation obligations on Defendants outside the ordinary mechanisms and compelling them to search the devices of Ms. McCarthy, who has

13

become a private citizen during the pendency of this case. Given all the other deficiencies of CEI's claims, and of its motion to compel preservation, *see supra* at 5–12, this Court should find that CEI is not entitled to the premature injunction it requests.

## CONCLUSION

For the reasons stated herein, CEI's Motion to Compel Preservation of Gina McCarthy's Records Relevant to Plaintiff's FOIA Requests, ECF No. 24, should be denied.

Dated: October 27, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Cody T. Knapp*
CODY T. KNAPP, #5715438 (NY)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel.: (202) 532-5663
E-mail: cody.t.knapp@usdoj.gov

*Counsel for Defendants*