UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE,<br>    Plaintiff<br><br>    v.<br><br>JOHN PODESTA, in his official capacity as Chair of the National Climate Task Force, *et al.*<br>    Defendants. | Civil Action No. 21-1238 (CKK) |

**MEMORANDUM OPINION**
(November 28, 2022)

This Freedom of Information Act ("FOIA") matter is before the Court on Defendants' [20] Renewed Motion to Dismiss in Part. Defendants argue that Plaintiff's [7] Complaint fails to state a claim for relief against Defendants John Podesta and the National Climate Task Force because neither are "agencies" subject to FOIA. The Court agrees and, upon review of the pleadings,[1] the relevant legal authorities, and the entire record, the Court **GRANTS** Defendants' [20] Renewed Motion to Dismiss in Part.

**I.    BACKGROUND**

For the purposes of the motion before it, the Court accepts as true the well-pleaded allegations in Plaintiffs' complaint. The Court does "not accept as true, however, the plaintiff's

---

[1] This Memorandum Opinion focuses on the following documents:
- The Amended Complaint, ECF No. 7 ("Compl.")
- Memorandum in Support of Defendants' Renewed Motion to Dismiss in Part, ECF No. 20-1 ("Defs.' Br.")
- Memorandum in Opposition to Defendants' Renewed Motion to Dismiss in Part, ECF No. 21 ("Pl.'s Opp.")
- Reply in Support of Defendant's Renewed Motion to Dismiss in Part, ECF No. 22 ("Defs.' Reply")

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court recites only the background necessary for the Court's resolution of the pending Motion.

In Executive Order 14008, President Joseph R. Biden Jr. established the National Climate Task Force led by the newly-created National Climate Advisor. Exec. Order No. 14008, Tackling the Climate Crisis at Home and Abroad, 86 Fed. Reg. 7619, 7622-23 (Jan. 27, 2021) ("E.O. 14008" or "Executive Order"). The Executive Order charges the Task Force with "facilitat[ing] the organization and development of a Government-wide approach to combat the climate crisis" as well as "facilitat[ing] the planning and implementation of key Federal actions to reduce climate pollution; increase resilience to the impacts of climate change; protect public health; conserve our lands, waters, oceans, and biodiversity; deliver environmental justice; and spur well-paying union jobs and economic growth." *Id.* at 7623. Task Force members are instructed "to prioritize action on climate change in their policy-making and budget processes, in their contracting and procurement, and in their engagement with State, local, Tribal, and territorial governments; workers and communities; and leaders across all the sectors of our economy." *Id*.

Additionally, the Executive Order obligates the heads of various executive agencies and departments to provide the Task Force with certain plans, reports, and appraisals. For instance, it requires each agency heads to "submit a draft action plan to the Task Force and the Federal Chief Sustainability Officer within 120 days of the date of this order that describes steps the agency can take with regard to its facilities and operations to bolster adaptation and increase resilience to the impacts of climate change." E.O. 14008 at 7625.

The Task Force has changed somewhat since the complaint and pertinent briefs in this case were filed. Ali Zaidi has replaced Gina McCarthy as the National Climate Advisor. White House, *Readout of the October National Climate Task Force Meeting* (Oct. 18, 2022) https://www.whitehouse.gov/briefing-room/statements-releases/2022/10/18/readout-of-the-october-national-climate-task-force-meeting/ (hereinafter "October Readout"). Additionally, the National Climate Advisor is now second-in-command of the Task Force, below the Senior Advisor for Clean Energy Innovation and Implementation, a position currently held by John Podesta. *Id*. What has not changed is the predominance of executive department and agency heads in the Task Force's membership—they make up twenty-one of its twenty-eight members. The rest are staffers from the Office of the President, otherwise known as the White House Office, which is the component of the Executive Office of the President that works most closely with the President. *See Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980).

In February and March of 2021, relying on FOIA, Plaintiff sought information regarding both the Task Force's first meeting, and certain communications involving the Task Force from the Task Force, McCarthy, the Office of the Secretary of Commerce, the Office of the Administrator of the Environmental Protection Agency ("EPA"), and other agencies. Compl. at 3. In response, Defendants move to dismiss only as to Podesta and the Task Force, arguing that they are not "agencies" subject to FOIA. *See* 5 U.S.C. § 552(a)(3)(A) ("each *agency*, upon request . . . shall make [] records promptly available" (emphasis added)). Defendants contend that McCarthy cannot be an agency because she is an individual, and that the Task Force cannot be an agency because it lacks substantial authority independent of the President. Defs.' Br. at 5-14. With the pending motion fully briefed, the Court turns to its resolution.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The factual allegations within a complaint, if accepted as true, must be sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 314–15 (D.C. Cir. 2014). In deciding a motion to dismiss under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and information about which the Court may take judicial notice. *Abhe v. Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## III.   DISCUSSION

### A. Definition of Agency

Under FOIA, only "agenc[ies]" are required to "make available to the public" various specified types of information. 5 U.S.C. § 552(a). Congress originally defined an agency, for the purposes of FOIA, as "'each authority of the Government of the United States,'" subject to certain exceptions which are not relevant to this case. *See Armstrong v. Exec. Office of the President*, 90 F.3d 553, 557 (D.C. Cir. 1996) (quoting 5 U.S.C. § 551(1)).

However, in 1974, Congress amended FOIA's definition of agency to cover any "executive department, military department, Government corporation, Government controlled

4

corporation, or other establishment in the executive branch of the Government, including the Executive Office of the President ("EOP"), or any independent regulatory agency."  5 U.S.C. § 552(f)(1).  This definition "was not, however, meant to cover 'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President.'"  *Armstrong*, 90 F.3d at 558 (quoting H.R. Conf. Rep. No. 93-1380, at 14 (1974)).

In discussing the impact of certain amendments, the D.C. Circuit explained in *Armstrong*, 90 F.3d at 558, FOIA's definition of "agency" incorporates the D.C. Circuit's definition in *Soucie v. David*, 448 F.2d 1067 (1971).  In *Soucie*, the Circuit held that FOIA's definition of "agency" included "any administrative unit with substantial independent authority in the exercise of specific functions."  448 F.2d at 1073.  The court went on to conclude that the Office of Science and Technology Policy ("OST"), an entity within the EOP, was an agency because it did not have the "sole function [of] advis[ing] and assist[ing] the President."  *Id.* at 1075.  On different occasions, the *Souci* test has focused on either whether an EOP entity has the sole function of advising and assisting the President, or whether it has substantial independent authority.  *CREW v. Off. of Admin.*, 566 F.3d 219, 222 (D.C. Cir. 2009).  However, the D.C. has made clear that the two standards are functionally identical:  an entity that has substantial authority independent of the President does not have the sole function of advising and assisting the President, and vice versa.  *See Meyer v. Bush,* 981 F.2d 1288, 1293 (D.C. Cir. 1993).

**B. Podesta and McCarthy**

Neither McCarthy, as former Chair, nor Podesta, as current Chair, are subject to FOIA.  Needless to say, individuals are not agencies.  *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) ("[T]he district court properly dismissed the named individual defendants because no cause of action exists that would entitle appellant to relief from them under the

5

Privacy Act or FOIA."); *see also Sanders v. U.S. Dep't of Just.,* No. 10-5273, 2011 WL 1769099, at *1 (D.C. Cir. Apr. 21, 2011) (per curiam) (claims against individual defendants are not cognizable under FOIA). In opposition, Plaintiff states that it is suing "Ms. McCarthy only in her official capacity as Chair of the Task Force," Pl.'s Opp. at 10 n.6, but this non sequitur does not morph an individual into an agency. Therefore, all claims against Podesta, as substituted for McCarthy, must be dismissed.

### C. National Climate Task Force

Nor is the National Climate Task Force an agency for the purposes of FOIA because, even taking the complaint's allegations as true, the Task Force lacks substantial authority independent of the President. The "substantial independent authority" test is governed by the following factors: "(1) how close operationally the group is to the President, (2) whether it has a self-contained structure, and (3) the nature of its delegat[ed] authority." *See CREW*, 566 F.3d at 222 (cleaned up). "These three factors are not necessarily to be weighed equally; rather, each factor warrants consideration insofar as it is illuminating in the particular case." *Armstrong*, 90 F.3d at 558.[2] The lodestar of the Court's analysis nevertheless remains whether the entity in question exercises "substantial independent authority." *See id.* at 557-58.

1. Operational Proximity

---

[2] When applying this test more recently, the D.C. Circuit mentioned the *Meyer* factors but proceeded to apply a conglomerated "substantial independent authority" test to determine if the EOP's Office of Administration is an agency subject to FOIA. *CREW*, 566 F.3d at 221 (citing *Meyer*, 981 F.2d at 1293). Whether the Court uses a conglomerated test or a fractionalized one to frame its analysis, the essence of each *Meyer* factor remains relevant to the inquiry. In any event, even were these theories distinct, Plaintiff's claims against the Task Force would fail under both.

The first factor—how operationally close the group is to the President—suggests the Task Force does not wield substantial independent authority. Although Executive Order does not describe how the President interacts with the Task Force, *see* E.O. 14008, a few of its characteristics establish its proximity to the President. First, the Task Force is led by the "Senior Advisor to the President for Clean Energy Innovation and Implementation" and the "Assistant to the President and National Climate Advisor." October Readout. As personnel within the White House Office—the sub-unit within the broader Executive Office of the President that works closest with the President—these officials serve solely to advise and assist the President. *See Kissinger*, 445 U.S. at 156. They therefore possess no substantial independence from the President when they lead the Task Force. The membership of a handful of other White House Office staffers further demonstrates the President's proximity to the Task Force for similar reasons.

The rest of the Task Force consists of department and agency heads. October Readout. Although these individuals exercise independent authority as heads of their independent respective agencies, they exercise no independent authority when acting as *members of the Task Force*. The Task Force, and they as members, do not, for example, issue regulations or enforce federal law. When fulfilling their duties as members of the Task Force, they only confer among themselves and advise the President. See E.O. 14008 at 7623. The Task Force is, at most, a discussion group. As such, this first factor weighs in favor of Defendants.

  2. <u>Self-Contained Structure</u>

The second factor—whether the group has a self-contained structure—weighs in Defendants' favor. As a threshold matter, "the President does not create an 'establishment' subject to FOIA every time he convenes a group of senior staff or departmental heads to work on

a problem." *See Meyer*, 981 F.2d at 1296. To "qualify as an agency that exercises substantial independent authority," a group convened by the President must have a self-contained structure. *See Armstrong*, 90 F.3d at 559. In *Meyer*, the D.C. Circuit concluded the President's Task Force on Regulatory Relief, which consisted of the Vice President and certain cabinet members, did not have a self-contained structure because it was merely a "partial cabinet group" that did not employ its own, independent staff. 91 F.2d at 1296. In contrast, the D.C. Circuit in *Armstrong* concluded that National Security Council did have a self-contained structure because it had a "professional corps of more than 150 employees, organized into a complex system of committees and working groups reporting ultimately to the Executive Secretary," all of whom were assigned to particular offices that were "each responsible for a particular geographic region or functional area, with clearly established lines of authority both among and within the offices." 90 F.3d at 560.

The Task Force here is far more akin to the Task Force on Regulatory Relief than the National Security Council. Plaintiff's complaint does not allege that the Task Force has its own dedicated staff, and public records suggest it does not. *See* October Readout. Such a configuration—made up entirely of people "borrowed" from other government organizations for a limited purpose and duration—does not have a self-contained structure. Therefore, this factor weighs in favor of Defendants.

       3.  <u>Nature of Delegated Authority</u>

The third factor—which concerns the nature of the authority delegated to the Task Force—also weighs in Defendants' favor. An entity within the Executive Office of the President does not have substantial independent authority if it does no more than merely advise the President or coordinate across the executive branch on the President's behalf. *See, e.g.*,

8

*Rushforth*, 762 F.2d 1038, 1043 (D.C. Cir. 1985) (Council of Economic Advisors does not have substantial independent authority because it is only statutorily charged with appraising federal programs in order to make recommendations to the President); *Armstrong*, 90 F.3d at 565 (the National Security Council does not have substantial independent authority because it plays no "substantive role apart from that of the President, as opposed to a coordinating role on behalf of the President").

Only where the entity has a mandate to do more than advise or coordinate does that entity wield substantial authority independent of the President.  *See, e.g.*, *Rushforth*, 762 F.2d at 1042; *CREW v. Off. of Admin.*, 566 F.3d 219, 223 (D.C. Cir. 2009) (noting Office of Management and Budget was an agency because "it has a statutory duty to prepare the annual federal budget, which aids both Congress and the President").  *Cf. also Pac. Legal*, 636 F.2d at 1262 (Council on Environmental Quality is an agency because it "issue[s] regulations to federal agencies for implementing all of the procedural provisions of [the National Environmental Policy Act].").

The National Climate Task Force does not support Congress, issue binding regulations to any party, or perform any function apart from advising and assisting the President.  The Executive Order makes apparent that the Task Force's role is merely to "facilitate" the organization, development, and implementation of federal climate policy by serving as a forum for communication and coordination, pursuant to the President's goals. E.O. 14008 at 7623.  It requires executive branch agencies to provide various reports, plans, and appraisals to the Task Force, but it does not empower the Task Force to conduct its own formal evaluations, or take any concrete steps with regard to what it receives.  Without any independent authority, all the Task Force can do with such inputs is use them to inform its members and other officials in order to bolster their individual and collective decision-making.

It is the Task Force's individual members—leaders of executive departments and agencies—that possess the actual power to execute policy (in addition to the President, himself). That is why Executive Order 14008 instructs the Task Force's *members* "to prioritize action on climate change in their policy-making and budget processes, in their contracting and procurement, and in their engagement with State, local, Tribal, and territorial governments; workers and communities; and leaders across all the sectors of our economy." E.O. 14008 at 7623. To the extent that the Task Force does have any capacity to direct other executive branch components, "it is rather hard to imagine that…any…head of a department or agency who reports directly to the President, would acquiesce in a Task Force decision that was thought not to represent directly and precisely the President's opinion." *Meyer*, 981 F.2d at 1295. In sum, this factor too strongly suggests that the Task Force is not an agency and that Defendant's motion should be granted.

### D. Discovery

Lastly, the Court must address Plaintiff's request for discovery. As a threshold matter, discovery in FOIA cases is only granted in the most exceptional of circumstances. *See, e.g.*, *Cole v. Rochford*, 285 F. Supp. 3d 73, 76 (D.D.C. 2018). More importantly, the record before the Court, and particularly the Executive Order, is more than adequate to resolve the narrow legal issue before it. *See Meyer*, 981 F.2d at 1294 ("A careful reading of the Executive Order . . . is the most important indication of the Task Force's role . . . ."). As such Plaintiff's request for discovery is denied.

\#

\#

\#

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's [20] Motion to Dismiss in Part.  An appropriate order accompanies this Memorandum Opinion.

Dated: November 28, 2022

>                                    /s/
> COLLEEN KOLLAR-KOTELLY
> United States District Judge